## Randolph, et al. v. Ballard County Bank.

(Decided February 8, 1911.)

### Appeal from Ballard Circuit Court.

1. Corporations—Private—Statutory Requirement—Kentucky Statutes, Chapter 32.—Any number of persons, not less than three, are empowered by statute to become incorporated for doing business by complying with the requirements of the chapters on private corporations. (Chapter 32, Kentucky Statutes.)

2. Powers Derived From State.—When incorporated under the general law now, the corporations powers are derived from the State and are as if the particular corporation was named in the statute and its articles were embodied therein.

3. Engaging in Business Without Being Incorporated.—To engage in the business of a corporation without becoming incorporated under the statute is to violate the provisions of the article on corporations. To exceed that which the statute allows is no less a violation of the law.

4. Directors—Liability.—Directors of corporations alone have the power of their control. If they allow managing officers of the corporation to exceed or otherwise to violate the charter of the company, or any provision of the statute regulating them, it is intended by Section 550 of the statute to hold them personally liable for the defection. They are immune from personal liability when they do their duty imposed by the statute, when they

neglect that duty, or wilfully violate it, they are liable for the consequences.

JESS F. NICHOLS and J. B. WICKLIFFE for appellant.

F. L. TURNER for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

The Ballard News Printing Company was an incorporated company, under the laws of this State. Appellants and W. F. Purdy were its directors. In its articles of incorporation the limit of its indebtedness was fixed at $500. It became indebted to appellant bank on April 7, 1905, $300 evidenced by note; and on February 6, 1909, it executed another note to the bank for $1,429.31. The latter was to close an overdraft.

The company made a general assignment for the benefit of creditors. Its assets amounted to about $200.

This suit was brought by the bank against the printing company to recover judgment for $500 upon the notes sued upon, and against all the directors to recover the balance of the notes because of their violation of section 550, Kentucky Statutes.

W. F. Purdy was cashier of the bank at the time the debts sued on were created. He was also a director of the printing company, and its president and general manager.

The directors sued, other than Purdy, filed answer contesting their liability, alleging that the indebtedness on behalf of the printing company to the bank was created by Purdy alone and without their consent or knowledge, although they admit in the pleadings that they consented to the execution of the last named note on the assurance of Purdy that it was desired for appearance sake to prevent trouble with the bank examiner who was shortly expected, and under the promise by Purdy to finally cancel and return the note.

The court sustained a demurrer to the answer, and as it was not amended so as to improve the defense asserted, rendered judgment in behalf of the bank against the printing company for $500 subject to credit by the amount ordered paid over by the assignee, and rendered judgment against each of the directors for the excess of the bank's two notes above $500. The directors, save Purdy, appeal.

Any number of persons not less than three are empowered by statute to become incorporated for doing

business, such as includes that engaged in by the Ballard Printing Company, by complying with the requirements of the chapter on private corporations (Ch. 32, Ky. Stats., section. 538). Among other things required to be stated by the incorporators in their articles is "the highest amount of indebtedness or liability which the corporation may at any time incur." (Sub. Sec. 8 of Sec. 539, Ky. Stats.)

Section 550, Ky. Stats., reads: "If the directors or officers of any corporation shall fail or refuse to comply with, or shall violate any of the provisions of this article, those so failing, refusing or violating shall be jointly and severally individually liable for any loss or damage resulting to any person from such failure, refusal or violation, and, in addition thereto, the persons so liable shall be each punished by a fine of not less than one hundred dollars nor more than one thousand dollars."

There was not a right at common law to incorporate trading or manufacturing companies. They were created by act of parliament, and in this country for a long time by special act of the Legislature. It was usual, at least always permissible, for the Legislature to limit in the act the amount of indebtedness which the corporation might incur. Under the existing constitution of this State, special legislation of that class is prohibited, and the Legislature has provided instead by general law for such incorporation. The law now as before creates the corporate being, endows it with powers, and sets upon it limitations. It may not exceed either. When incorporated under the general law now the corporation's powers are derived from the State, and are as if the particular corporation was named in the statute, and its articles agreeable with the statute, were embodied therein. So when the statute allows not less than so many to engage in a particular business, upon terms prescribed by the statute, or to be set forth in the articles adopted, by the statute, or to be set forth in the articles adopted, what is thereby allowed by the statute, and what is thereby forbidden is forbidden by the statute. To engage in the business as a corporation without becoming incorporated under the statute is to violate the provisions of the article on corporations. To exceed that which the statute allows is not less a violation of the same. So, when the articles of incorporation place a limit on the indebtedness which the corporation may incur, to exceed

the limit is to violate the chapter on incorporations, as it would be to engage in a business not authorized by its charter, or the statute. Notwithstanding trading corporations were not the creations of the common law, it took cognizance of them, and fixed the liabilities of their officers and agents for acts ultra vires. It has accordingly been held that at the common law, if directors contracted indebtedness in excess of the limit prescribed by the corporation's charter, it was not sufficient to render them liable to creditors of the corporation. (Frost Mfg. Co. v. Foster, 76 Iowa, 535, 41 N. W. 212.) And where directors of a bank issued notes in excess of the authority given by the law of its incorporation they were held not personally liable. (Sanford v. McArthur, 18 B. Mon., 411.)

Perhaps no other manner of doing business has grown as much in the last century as that through corporations. No more useful expedient has been devised. At the same time they have developed many opportunities for fraud and imposition, which owing to the rules of the common law governing the liabilities of their officers, often went unpunished and unrequited. One of the problems of this situation has been to fix a just liability, a legal responsibility, either upon the corporation, or its officers, without unnecessarily impairing the utility or discouraging the existence of this great commercial agency. And it is yet an unsolved problem. Still, our legislation was aimed to conserve the utility of incorporations, with strict accountability of their officers to those dealing with them, as well as to their stockholders and the general public. In several instances the statutes have placed upon directors and other officers of corporations a personal liability, which did not exist at the common law. There is we apprehend, a three-fold object in this. One was to protect those dealing with the corporation. Another was to protect stockholders. The third was to protect the public, as insolvent, irresponsible corporate trading bodies would be more apt to break and thereby endanger credit and commercial stability. To hold directors to stricter conduct in discharging their official duties, would tend to strengthen corporate concerns and lessen the chance for their becoming insolvent.

The aim of this advanced legislation could not have been to curtail the duty of corporate directors, or even to preserve the immunity that they enjoyed at the common law. It was intended, we think, to enlarge duty by

extending responsibility. Stockholders have little or no direct control of the corporation's affairs; the public dealing with it have none. Directors alone have the power of control. If directors allow managing officers of the corporation to exceed, or otherwise violate the charter of the company, or any provision of the statute regulating corporations (which are to be regarded as being read into the charter of each corporation doing business under the statute) it is intended by section 550 supra to hold them personally liable for the defection. They are immune from personal liability when they do their duty imposed by the statute; when they neglect that duty, or willfully violate it, they are made liable for the consequences.

It is argued that such a strict rule will deter responsible men from assuming the office of directors in private corporations, as they generally do not receive pay for such services. That may be. But, then, the public would know the character of men whom they had to deal with. Persons dealing with the corporation would not be misled into relying upon the business integrity and ability of a directorate, composed of capable, successful men, who did not in fact, exercise their capability in the corporate affairs, but left the management to incompetent or unworthy subalterns.

The directors of a trading or commercial corporation are in truth managing their own business, in a sense. They have availed themselves of a privilege accorded by law of doing the business as an artificial person. They ought to know at least the legal limitations upon the powers of the corporate being by which they ply their business. When they exceed their legal powers, or suffer their managing officers to do so, if notwithstanding, they are as free from personal liability for such excesses as if they had strictly observed the statute and their charter limitation, then the statute imposing limitations is not a protection either to stockholders or creditors. Such a rule would be to place a premium upon negligence in directors of corporations; would reward their indifference to duty; would give them the benefit of such action if it turned out profitably for the corporation, but impose no liability on them if it turned out otherwise. The public policy is indicated by the statute; it is to hold directors responsible for excesses or other breaches of the statute, including the charter of the company given by the statute; it rewards the faithful and diligent direc-

tor by immuning him from personal liability for the corporation obligations; it punishes his negligence of breach of duty, whether it be an act of malfeasance, or nonfeasance, whereby the law of the corporation's being is violated. Let directors of commercial corporations understand that under our statute they are active, not passive trustees; that they must at least use ordinary care and diligence in managing the corporation's affairs, as if they were their own, and that if they turn over its management to somebody else and the latter exceeds the corporation's charter, it is the same as if the directors themselves had exceeded it, as in truth, and in legal intendment, the act of their agents concerning a duty particularly imposed upon the directors is their own act in the matter.

The answer admitted that the managing officer of the printing company ran its business without the knowledge or control of the directors concerning the creation of liabilities in excess of the charter limit; it admitted that when their attention was called to the fact they ratified it by executing for the corporation the note sued on, which was three times greater than the company's power to legally incur; that they did this to deceive the bank officials, and to impose on the representatives of the public whose duty was to examine into the character of the bank's assets and to require them to be made good, if they were not good. This, on a small scale, is a feature of wild-cat financiering, done under the guise of corporate action, presumably sanctioned and safe-guarded by law, that has brought reproach upon commerce, and serious public embarrassment. Now let them lie in the bed they have made. It was violating their trust to turn over the corporations entire management, directorate and all, to another; it was wrong to allow the charter limitation to be exceeded; it was wrong to make the note of the corporation in violation of the law, and especially so as to deceive and mislead the public and public officials; it is not an excuse that the directors had neglected their duty, or had attempted to abdicate its discharge to another; it is not an excuse, either, that their agent induced them to ratify the act so as to benefit somebody else.

But it is contended that Purdy was the cashier of the bank as well as president of the printing company; the bank is charged with notice of the limitation in the printing company's charter, as well as with notice that Purdy was violating it. Not so. Purdy's position as agent of

the bank would impute knowledge to it which he possessed only upon reasonable presumption that he would divulge to it his knowledge. His dual position renders it more probable that he would not have disclosed his knowledge in this instance. His personal interest was contrary to that of the bank; he was actually deceiving it, it seems, in the transaction. But whether he was actively misleading the bank or not, it is contrary to probability that he would have divulged to it matter within his knowledge which if divulged would have prevented the consummation of his transaction with it. Therefore, the presumption does not obtain that he did impart his knowledge to the bank. Presumptions of a fact are based upon probabilities, not improbabilities.

Judgment affirmed.