## Croninger v. Bethel Grove Camp Ground Association.

(Decided December 10, 1913).

Appeal from Kenton Circuit Court
(Common, Criminal Law and Equity Division).

1. Evidence, Presumption—Corporate Officers and Stockholders—Knowledge of Articles.—Articles of incorporation constitute the contract between the stockholders and officers of a corporation, and both stockholder and officer are chargeable with knowledge of the provisions of the articles.

2. Corporations—Excess of Debt Limit—Contracts.—A contract made with a corporation by one of its officers and directors, whereby it undertakes to impose on the corporation an obligation in excess of the debt limit fixed in its articles of incorporation, is ultra vires and void.

3. Contracts—Construction—Surplus Earnings of Corporation.—Where a director contracted with a corporation to make certain expenditures for its benefit, stipulating that the amount of such expenditures, with interest, should be repaid to him out of the first surplus remaining from the earnings of the corporation, after provision is made for payment of current expenses and the interest on its bonded debt, and thereafter the entire assets of the corporation were sold, he cannot subject any part of the proceeds of such sale, they being insufficient to discharge the corporation's other obligations and to reimburse the stockholders for the amount contributed by them to its capital stock.

4. Contracts—Action—Pleading.—In an action to subject a fund to the payment of a demand growing out of a contract to be reimbursed, out of specified surplus earnings, for certain expenditures made by a party to the contract at the instance of the other party, the petition must allege that the fund sought to be subjected represents such surplus.

5. Corporations—Ultra Vires Contract—Enforcement.—A corporation, in dealing with an ordinary creditor, cannot retain the benefit of an ultra vires contract and refuse to perform the ob-

ligations imposed upon it by the contract, but this rule does not apply to a contract between the corporation and a director where the claim of the latter, for which it is sought to hold the corporation liable, is one which the corporation was without power to make.

JOHN E. SHEPARD for appellant.

SCHMIDT & HOLMES for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Bethel Grove Camp Ground Association, was incorporated July 12, 1901, to provide a place for holding religious services, on grounds secured by it, for all classes of people; and especially to hold camp meetings and cultivate a better fraternal feeling between the different denominations. Its grounds are situated on the Licking River, near Visalia, in Kenton County. They contain an auditorium, dining hall, and a number of cottages, in use for the meetings held by the association.

As originally adopted, the articles of incorporation fixed the capital stock of the association at $4,000.00, divided into 400 shares of $10.00 each. The business of the corporation was under the control of a board composed of seven directors, who were empowered to elect from their own number a president, vice-president, secretary and treasurer. To prevent loss to the stockholders, the articles of incorporation expressly provided that the highest amount of indebtedness which the corporation could incur, should not exceed one-half of the amount of its paid-up capital stock, and that the individual, or private, property of the stockholders should be exempt from liability for the debts of the corporation. There were originally 220 shares subscribed aggregating $2,200.00; therefore, the limit of indebtedness which could be incurred was $1,100.00.

By amended articles of incorporation, duly adopted and recorded February 13, 1904, the amount of the capital stock was reduced to $3,000.00, divided into three hundred shares of $10.00 each, and the highest amount of indebtedness which the corporation could, at any time, incur was limited to $2,500.00. As appellee, at the time of making this change in its articles of incorporation, was owing a part of the purchase price for its grounds, and for necessary improvements which had been erected thereon, its board of directors were, by

resolution, authorize to issue bonds to the amount of $2,500.00, bearing six per cent interest, per annum, payable semi-annually, to be secured by a mortgage on its property, which bonds the board of directors was authorized to sell that their proceeds might be applied to the payment of the indebtedness referred to. On May 16, 1904, the mortgage and bonds in question were duly made and issued, the latter to mature September 1, 1915, and be paid at the Citizens National Bank of Covington, Kentucky. The mortgage was executed to one Henry Feltman as trustee, and provided that, if any of the interest coupons should not be paid at maturity and such default should continue for a period of sixty days thereafter, the entire debt secured thereby should immediately become due and payable, and the trustee authorized to enforce, by suit, the mortgage lien and subject the mortgaged property to the payment of the bonds, principal and interest, according to law. The bonds, issued by appellee as above stated were at once sold and their proceeds applied to paying the debts of appellee and improving its property.

It appears from the record that, instead of being relieved of its financial embarrassments by the sale of the bonds, appellee's indebtedness was further increased until its affairs became so involved that it failed to pay the semi-annual interest, which became due on its bonds April 1, 1908, and not having paid same within sixty days after maturity, Feltman, the trustee named in the mortgage, brought suit in the Kenton Circuit Court to recover the amount thereof and enforce the mortgage lien for the benefit of the bondholders. At the succeeding term of the court, he obtained judgment as prayed, and thereafter, the mortgaged property was sold by the master commissioner and purchased by the appellant, Ed. H. Croninger, at a price sufficient to pay the aggregate amount of the bonds, principal and interest, and leave a surplus of $1,191.00, in the hands of the master commissioner.

Following this sale and the confirmation thereof, appellant brought this action in the Kenton Circuit Court, seeking to recover of appellee an indebtedness of $509.70, alleged to be due him for money expended, as alleged, at its request, and upon its promise to repay same, in making certain necessary repairs upon the property covered by the mortgage executed to Feltman, trustee, for the benefit of the holders of its bonds. The several items going to make up the aggregate amount sued for

are explicitly set forth in the petition. It was also alleged in the petition that appellee was insolvent, but that it had in the hands of the master commissioner the surplus arising from the sale of the mortgaged property, which it was seeking to have distributed to its stockholders, and that same should be applied to the payment of appellants' claims sued on, and to this end the surplus in question was attached in the hands of the master commissioner.

It appears from the record that shortly after the issuance of the bonds and execution of the mortgage by appellee, the appellant became one of its board of directors and also its treasurer, and it is alleged in the answer and counterclaim of appellee, that as such treasurer, appellant received $226.23 belonging to appellee, for which he failed to account. Appellant, by reply, denied that he had received as treasurer for appellee $226.23, but admitted in an amended reply, that he had received $200.00 for which he had not accounted. The answer denied appellant's right to subject the surplus in the hands of the master commissioner to the payment of his demands, or any of them, and alleged that same should be distributed *pro rata* among its stockholders. It was further alleged in the answer that the items of expenditure, sought to be recovered by appellant, created no legal indebtedness on the part of appellee or its stockholders; and that the contract authorizing such expenditures was *ultra vires,* as it was intended to, and did, burden appellee with a liability in excess of the limit of indebtednesss allowed by its articles of incorporation. The contract in question was made November 23, 1904, and is contained in the following writing:

"The Bethel Grove Camp Ground Association, Inc., of Visalia, desires to make certain repairs and improvements, viz.: to roof the auditorium, to make a new cistern, to repair an old one at the auditorium, and to put in gutters and pipes connecting same in order to have a good water supply. Mr. E. H. Croninger, of Covington, Ky., being desirous of the prosperity of said association agrees to pay for these repairs and improvements as stated, with the understanding that the money so advanced will be returned to him with interest out of the first surplus remaining from the earnings after provision for current expenses and interest on bonded debt. He declares himself cognizant of the fact that the association cannot legally contract any larger debt than it has at the present time; that the above prospective

debt to him is not authorized by the articles of incorporation and that the directors will not be held personally liable in any event for the indebtedness to him as stated herein, but relies entirely on the earning power of the association to discharge the debt.''

On the hearing, the circuit court dismissed the appellant's petition and gave appellee judgment against him on its counterclaim for the $200.00, which he admitted he had received and had not accounted for. From the judgment entered in accordance with these conclusions, this appeal is prosecuted.

The judgment of the circuit court rests upon the theory that the contract under which appellant made the expenditures in question was *ultra vires,* as it contemplated a liability in excess of the limit of indebtedness permitted by appellee's articles of incorporation, and that this was, at the time, known to appellant, as a director and officer of the corporation; and that in the writing evidencing the contract, he expressly declared himself cognizant of the fact that appellee could not legally make such a contract and his willingness to look alone to the earning power of the association to discharge the debt.

Section 538, sub-section 8, Kentucky Statutes, *requires* corporations of this State to specify in their articles of incorporation ''the highest amount of indebtedness or liability which the corporation may at any time incur''; and sub-section 9, ''whether the private property of the stockholders, not subject by the provisions of the law under which it is organized, shall be subject to the payment of corporate debts, and if so, to what extent.'' As a matter of law, the articles of incorporation constitute the contract between the stockholders of the corporation and is binding alike upon the stockholders and officers of the corporation, therefore, both the stockholders and officers are chargeable with knowledge of all the provisions of the articles of incorporation. This is not a case in which a creditor, not a stockholder of the corporation, is attempting to enforce a contract which, by its terms, is *ultra vires;* but a case in which a derelict director and officer is trying to enforce a contract, admittedly *ultra vires,* made with the board of directors of the corporation. As its amended articles of incorporation provided that appellee should not incur an indebtedness exceeding $2,500.00, and this limit had been reached by the issuance and sale of the bonds aggregating that amount, secured by mortgage

upon all the property owned by the corporation, we agree with the circuit court that its contract with appellant, out of which the items of indebtedness sued for arose, was *ultra vires,* and, therefore, of no binding force; and further, that the illegality of the contract made by appellee's board of directors with appellant was known to the latter as well as the board of directors, when it was made. This is shown by the writing evidencing the contract and the agreement therein that appellant would take his chances of being repaid the amount he proposed to expend for appellee out of the first surplus remaining from earnings, after paying the current expenses and the interest on the bonded indebtedness. We are also of opinion that the surplus in the hands of the commissioner is not made up of earnings of the corporation, but is what is left of the capital stock, after the payment of the bonded indebtedness, which should be distributed among the stockholders; and that, to apply such surplus to the payment of appellant's demands would be violative of that provision of the articles of incorporation which declares that the private property of the stockholders shall not be subject to the payment of the corporate debts. Moreover, it is not alleged in the petition, or shown by any proof introduced in appellant's behalf, that there has been, or is, any surplus remaining from the earnings of the corporation, after providing for the payment of its current expenses and the interest on its bonded indebtedness.

In Kauffman & Co., v. Loventhal, 8 Rep., 62, a teacher was employed by the trustees of an academy to teach its school, under an agreement that he was to be paid for his services out of what remained of tuition collected after paying all expenses. It was held that a creditor, who sought to subject the amount due the teacher from the academy trustees, must allege and prove that they had collected more than enough to pay all expenses, or that there was more than enough for that purpose that could be collected, and that there had been sufficient time to make the collection; and as this would have been so, had the teacher himself been suing to recover his compensation, a creditor seeking to subject the debt due him from the trustees of the academy would have no greater right than the teacher himself could have asserted and enforced. Ledford v. Smith, 6 Bush, 130; Anderson v. Ewing, 3 Litt., 247; In re Spanish Prospecting Co. Ltd., 20 Am. & Eng. Annotated Cases, 677; Macculskey v. Klosterman, 10 L. R. A., 787.

Having elected and agreed to be repaid the disbursements he made for appellee in the manner stated, and out of the particular fund specified in the contract, appellant has no claim upon any other fund; and it appears from the record that appellee never had a surplus of earnings, after paying its current expenses and the interest on its bonded indebtedness. Indeed, its earnings were never sufficient for these purposes. If they had been, we take it that appellee would not have made default in the payment of the interest upon its bonds.

The language of the contract descriptive of the fund for which appellant was to be paid can have no other meaning than that he was to be paid out of the net profits of the corporation; and if this should be treated as a case looking to a liquidation of appellee's affairs, there could be no surplus of earnings or net profits until its debts had been paid and the value of the capital stock restored to the stockholders, who advanced its equivalent in money to carry on the corporation's business. In point of fact, the business of the corporation was conducted at a loss to the stockholders, and the amount in the commissioner's hands is not sufficient to repair this loss.

We are not unmindful of the rule of law that a corporation, in dealing with an ordinary creditor, cannot retain the benefit of an *ultra vires* contract and at the same time refuse to perform its part of the obligation imposed by its terms. Albin Co. v. Commonwealth, 128 Ky., 295; Page on Contracts, section 1084. So, if appellant had been an ordinary creditor, appellee would not be heard to say that the contract in question was *ultra vires*. But, as previously intimated, appellant is not an ordinary creditor, but a director, who knowingly made a contract which imposed upon the corporation a liability in excess of the corporate limit of indebtedness. It is, however, contended by counsel for appellant that his relation as a director and officer of the corporation cannot affect the validity of the contract, as he was guilty of no fraud in its procurement and it did not result in profit to him. This, however, does not alter the fact that the contract was not within the corporate powers; in other words, his fault was in dealing with a corporation in a matter which he, as a director and officer, was bound to know was beyond its powers. As well stated in the written opinion of the circuit court: "A director is a trustee for the stockholders; it is his duty to conduct the business of the corporation in ac-

cordance with the laws relating to such trusts.   When he fails in this duty he is held responsible for his acts. In this State he is liable to the stockholders for any loss sustained by them by reason of a failure of his trust. Not only is he liable to the *cestui que trustent,* but likewise to other persons who may have been injured by his disregard of the law.   If then the directors pay an indebtedness in excess of the limit fixed in the corporate charter, the stockholders may recover from the directors.   So also a creditor whose claim originated in an act of the directors beyond the corporate power, may recover directly from the directors if the corporation is unable to pay.   Randolph v. Ballard County Bank, 142 Ky., 145.   * * *

"Now if the directors or the association could be held liable for a claim such as Mr. Croninger presents it would be absurd to contend that he, a director, could have any claim against the corporation.   And this is especially true when the corporation is without assets other than a small part of its capital stock.   * * *  It may be that, if there was a surplus over and above the capital stock, plaintiff might have been paid out of such surplus, but I think the law is clear that plaintiff's claim cannot be preferred over that of the stockholders. The terms of the contract show that plaintiff had no intention of making his claim a charge against the corporation.   All of the directors realized that they could not bind the corporation in the matter of this claim, and fearing that they might be held personally responsible, required plaintiff to release them from such liability. * * *,"

Section 548, Kentucky Statutes, prohibits directors of any incorporated company from declaring or paying any dividend, when the corporation is insolvent or when the payment of such dividend would render it insolvent or diminish the amount of its capital stock, and makes them jointly and severally individually liable for all debts of the corporation then existing or that may thereafter be incurred while they, or a majority of them, continue in office; and section 550 provides, "If the directors or officers of any corporation shall fail or refuse to comply with, or shall violate any of the provisions of, this article, those so failing, refusing or violating, shall be jointly and severally individually liable for any loss or damage resulting to any person from such failure, refusal or violation, and, in addition thereto, all persons

so liable shall be each punished by a fine of not less than one hundred nor more than one thousand dollars.'' Thus, it will be seen that appellant, in view of his being a director and treasurer of appellee, stands in an attitude altogether different from that of an outsider. If, under the circumstances here presented, the contract upon which he relies had been made with an outsider who, by reason thereof, advanced money to the corporation, as appellant claims to have done, he as a director would have been individually liable to such outsider for the money paid out for the corporation by the latter; in view of which it stands to reason that the appellant cannot recover a debt against the corporation which he would have been bound to pay if some one else had been concerned. Besides, the language of the written agreement which appellant signed showed that he had full knowledge of this fact, because of which he therein released the other directors of the corporation from any and all liability for the sums it obligated him to advance for the benefit of the corporation. It is manifest, therefore, that this is not a case in which the corporation, representing the injured stockholders, is estopped, but one in which the estoppel applies to the appellant alone.

In Randolph v. Ballard County Bank, 142 Ky., 145, the Ballard County News Printing Company, which was an incorporated company under the laws of this State with a limit of indebtedness fixed by its articles of incorporation at $5,000.00 was, together with its directors, sued by the bank upon two notes, one for $300.00 and the other for $1,429.31. The corporation had made an assignment for the benefit of creditors and its assets amounted to only $200.00. The petition sought to recover on the notes against the corporation to the extent of $500.00 and against the directors to recover the balance of the notes, because of their violation of section 550, Kentucky Statutes. The directors, save one Purdy who was cashier of the bank, by answer, contested their liability, alleging that the indebtedness on behalf of the printing company to the bank was created by Purdy alone and without their consent or knowledge, admitting, however, that they consented to the execution of the larger note, which was for an overdraft, on the assurance of Purdy that it was desired for appearance's sake to prevent trouble with the bank examiner, who was shortly expected, and under the promise by Purdy to finally cancel and return the note. The court sustained a demurrer to the answer and rendered judgment

against the corporation in behalf of the bank for $500.00, subject to credit by the amount paid by the assignee, and against each of the directors for the excess of the bank's two notes above $500.00. On the appeal of the directors, the judgment was affirmed. In the opinion, among other things, it is said:

"The law now as before creates the corporate being, endows it with power and sets upon it limitations. It may not exceed either. * * * To engage in the business as a corporation without becoming incorporated under the statute is to violate the provisions of the article on corporations. To exceed that which the statute allows is not less a violation of the same. So, when the articles of incorporation place a limit on the indebtedness which the corporation may incur, to exceed the limit is to violate the chapter on incorporations, as it would be to engage in a business not authorized by its charter, or the statute. * * *"

"The aim of this advanced legislation could not have been to curtail the duty of corporate directors, or even to preserve the immunity that they enjoyed at the common law. It was intended, we think, to enlarge duty by extending responsibility. Stockholders have little or no direct control of the corporation's affairs, the public dealing with it have none. Directors alone have the power of control. If directors allow managing officers of the corporation to exceed, or otherwise violate the charter of the company, or any provision of the statute regulating corporations (which are to be regarded as being read into the charter of each corporation doing business under the statute) it is intended by section 550, *supra*, to hold them personally liable for the defection. They are immune from personal liability when they do their duty imposed by the statute; when they neglect that duty, or willfully violate it, they are made liable for the consequences. * * *"

In Haldeman, &c. v. Ainslie, &c., 82 Ky., 395, will be found a more elaborate discussion of the doctrine under consideration. The action was instituted in the Louisville Chancery Court by Edwin Thompson and a number of banks of the city and by Ainslie, Cochran & Company against Haldeman and others. During the pendency of the action, Mrs. George Ainslie, as the executrix of her husband, having paid off the debts asserted by the banks and Thompson against the defendants, was made the real plaintiff in interest, and the litigation resulted in a judgment in her favor against the defendants (appel-

lants), and also a judgment in favor of Ainslie, Cochran & Company, surviving partners of the firm, of which Mrs. Ainslie's deceased husband was a member. The matters in litigation arose out of the settlement of the assets and liabilities of the corporation known as the Great American Fire Extinguisher Company. The articles of incorporation under which the corporation was formed was executed in October, 1873. The business of the corporation was the manufacturing and selling of a patent fire extinguisher. Its capital stock was $1,200,000.00, and each subscriber upon executing his note for $1,000.00, payable in bank, and paying $500.00 in money, as provided in the fifth section of the articles of incorporation, became entitled to paid-up stock of four hundred shares valued at $100.00 per share. In other words, he became entitled to $40,000.00 of stock in the corporation. By section six of the articles of incorporation, it was provided that the highest amount of indebtedness or liability, to which the corporation might at any time subject itself, should be the sum of $15,000.00; and by section seven, it was provided that the private property of stockholders should be exempt from liability for the debts of the corporation. The company was organized with B. F. D. Fitch as president, and George Ainslie, J. F. Bullitt, B. DuPont and others, directors. After remaining in business about two years the corporation, becoming financially embarrassed, by resolution of the stockholders and board of directors, transferred the assets of the corporation to the Babcock Fire Extinguisher Company and required the directors to wind up the affairs of the defunct corporation. When the corporation was dissolved, it was found that its indebtednesss amounted to over $33,000.00 and on the paper of the banks, which constituted the greater part of same, George Ainslie, deceased, had made himself personally liable except for $3,070.00, the amount of a debt incurred by the corporation with the firm of Ainslie, Cochran & Company, of which George Ainslie was an active member.

The defense made in the court below by the appellants to the claims of the executrix was that the president of the corporation, Fitch, and George Ainslie, the decedent, a director, without the consent of the stockholders of the corporation and without any authority from the board of directors, created this large indebtedness in direct violation of the terms of the charter. To what extent the directors, or any member of the corpora-

tion, participated in the creation of these debts was not made manifest by the record, and the only parties to the original agreement, who seemed to have incurred the liability, were George Ainslie, the decedent, and Fitch, the president. In the opinion, it is said:

"The effect of the limitation upon the amount to be paid by the subscribers for their stock, would not exempt them from liability to a creditor who had dealt with the corporation in ignorance of the articles of association, limiting the amount of the indebtedness to be created by the corporation or those conducting it. * * *

"In this case we think it clear that the banks could have recovered of the stockholders for the reason that those conducting the business of the corporation had created these debts for the benefit of the corporation. The banks could have pursued any of the parties to the bills, and required the individual members of the corporation, by a proceeding in equity, to pay up their stock in order that the debts might be satisfied. * * *

"The question presented in this case is: How, or by whom, were these debts contradicted? If by Fitch or Ainslie, in violation of the charter, and they, or either of them, subsequently paid off the debts, then it is maintained by the appellants that no right to contribution exists.

"It is plain that the parties to this association were endeavoring to protect themselves from liability when they inserted section six, providing that 'the highest amount of indebtedness or liability to which this corporation is at any time to subject itself, shall be the sum of $15,000.' This section is certainly not meaningless, and when the board of directors or any member of the corporation violates this provision of the charter, and seeks to make the stockholders personally liable, the consent of the stockholder must be shown or the liability will not attach. As between the stockholders, it cannot be said to be a corporate act, and neither the board of directors nor a majority of the members can make the individual stockholders liable in such a case, although they may remove the limit by a majority vote. It is a contract between them that no member, or a majority of the members, can repudiate so as to create a personal liability as between each other in excess of what they have agreed to pay. The restriction as to the liability for an amount less than the stock is binding between the parties. * * *

"The president and secretary of the corporation have both testified in this case, and there is neither a statement from them nor an exhibit filed with the books of the company, showing any direction or authority from the board of directors or from the individual stockholders to Fitch and Ainslie to create these debts. Nor had the board of directors or a majority of the stockholders the power to increase the liability of the corporation beyond the limit of the charter. If so, we see but little necessity in having a charter as the organic law of such associations; to adjudge otherwise would leave the shareholders at the mercy of the board of directors, who, if not controlled by the charter, could exercise unlimited power.

"In this case, if the board of directors had authorized the creation of the debts in express terms, it would not be a corporate act because in excess of the authority conferred by the charter. The unanimous vote of the stockholders could alone authorize the act so as to bind the corporation or the shareholders. * * *

"As the case is presented, the equities of the banks will not protect Ainslie or his personal representative, as, but for Ainslie's action, no such equities would have existed.

"His being a member of the association, with full knowledge of the protection to the shareholders by the charter under which they all derived their power, will preclude him or his representative from asking contribution, either on account of the moneys paid to the banks, or on the claim of Ainslie, Cochran & Company, of which Ainslie was an active member."

For the reason indicated in the opinion, the judgment was reversed and cause remanded for a dismissal of the petition of Ainslie's executrix.

We regard the opinion in the case *supra* decisive of the instant case, for, if the executrix of Ainslie was estopped in that case to recover of the stockholders of the corporation to the extent of their unpaid subscriptions, the moneys which he, as an officer and director thereof, had advanced in payment of its debts, on the ground that they were created by himself and another officer, in violation of the provisions of the charter of the corporation, for the same reason is the appellant in this case estopped to claim repayment from a fund belonging to the stockholders of the corporation, of moneys which he had paid out for it under an illegal contract creating an indebtedness against the corporation in ex-

cess of the limit fixed by its articles of incorporation, and with knowledge on his part that there would be no surplus of corporate earnings until the debts of the corporation for which it was legally liable should be paid and the stockholders restored the stock subscriptions paid by them.

It would unduly extend the opinion to comment, in detail, upon the authorities cited by appellant in support of his contentions. It is sufficient to say that none of them presents a state of case in which a stockholder, director, or other officer of a corporation, attempted to enforce a contract made with the corporation which, upon its face, was admittedly *ultra vires*.

As, in our opinion, the rights of the parties to this litigation were properly determined by the court below, the judgment is affirmed.