**FEDERAL DEPOSIT INS. CORPORATION v. AMERICAN SURETY CO. OF NEW YORK.**

No. 2325.

District Court, W. D. Kentucky, at Louisville.

June 30, 1941.

Wilson W. Wyatt, Baldwin C. Burnam, and Peter, Heyburn, Marshall & Wyatt, all of Louisville, Ky., for plaintiff.

J. McCauley Smith, Squire Ogden, and Ogden, Galphin, Tarrant & Street, all of Louisville, Ky., for defendant.

MILLER, District Judge.

The Federal Deposit Insurance Corporation as receiver of the Taylor National Bank of Campbellsville, Kentucky, brought this action to recover of the defendant, American Surety Company of New York, the sum of $11,008.06 with 6% interest from July 13, 1938 as the unpaid balance due to it under the defendant's Bankers Blanket Bond whereby the defendant agreed to indemnify the insured in an amount not exceeding $25,000 against direct loss sustained through any dishonest act of any of its employees. The Taylor National Bank claims to have suffered a loss covered by the bond in excess of the $25,000 coverage by reason of the dishonest acts of its President, T. O. Morton; that the defendant paid the plaintiff on July 13, 1938 upon said claim the amount of $13,-991.94 leaving unpaid the balance herein sued for. The defendant admits the execution and existence of the Bankers Blanket Bond sued upon, the loss to the plaintiff while the bond was in force and effect by reason of the dishonest acts of Morton, its president, but claims that it is entitled to an offset in the amount of $11,008.06 by reason of its subrogation to a claim on the part of the Committee of John Catron, a person of unsound mind, against the Taylor National Bank by reason of its having paid to the estate of said John Catron a loss caused said estate by its Committee on whose bond the defendant was surety.

Findings of Fact

Prior to January 1, 1930, John Catron, a resident of Taylor County, Kentucky, was adjudged to be a person of unsound mind by judgment of the Taylor County Court, and by said judgment M. D. Tucker was appointed Committee of said John Catron and duly qualified. Tucker as Committee of said Catron became the owner and holder of a warrant duly issued by Taylor County, Kentucky, in the principal amount of $7,802.53, payable in 1930 out of the county levy of 1930 and bearing interest at 6%. This warrant was a non-negotiable instrument. On September 11, 1931 the Taylor County Court accepted the resignation of Tucker as Committee of John Catron and appointed T. O. Morton as the successor Committee of John Catron. Morton executed and filed in the County Court a bond in the penal sum of $15,000, conditioned upon the faithful performance of his duties of such Committee. This bond was executed by the defendant American Surety Company as surety. On or about November 5, 1936 the Taylor County Court required Morton as such Committee to execute an additional surety bond which Morton did execute in the additional sum of $3,000 with the defendant American Surety Company as his surety thereon. On September 11, 1931, T. O. Morton as Committee of John Catron received from Tucker, former Committee of Catron, the Taylor County warrant above referred to together with other securities and cash constituting the estate of the incompetent. At that time Morton was President and a Director of the Taylor National Bank of

Campbellsville, Kentucky. The bank had outstanding 250 shares of capital stock, of the par value of $100 each which were owned of record by the following persons: T. O. Morton, 160 shares; Mrs. Zelma Morton, wife of T. O. Morton, 10 shares; S. S. Goode, father of Mrs. Zelma Morton, 10 shares; O. L. Goode, a nephew of S. S. Goode, 56 shares; Mrs. O. L. Goode, 4 shares; G. L. Gowdy, 10 shares. T. O. Morton was a dominating officer in the bank and transacted most of its important business affairs.

On September 11, 1931, and following his qualification as Committee for John Catron, T. O. Morton sold and delivered to the Taylor National Bank the Taylor County warrant above referred to, and the Taylor National Bank acting solely by and through its President, T. O. Morton, purchased the Taylor County warrant at its face value of $7,802.53, which amount it credited to the individual checking account of T. O. Morton in the Taylor National Bank. At the close of business on September 10, 1931 there was a balance of $2,474.52 in the individual checking account of T. O. Morton. On September 11, 1931 said checking account was credited with two deposits in the respective amounts of $1,-115.78 and $7,802.53. On September 11, 1931 there cleared through the Taylor National Bank against the individual account of Morton the following checks drawn by T. O. Morton: Check payable to the order of H. T. Parrott in the sum of $7,000, which was in payment of thirty-five shares of stock of the Farmers and Peoples Bank of Campbellsville, Kentucky, which was consolidated with the Taylor National Bank on September 15, 1931; check payable to the order of H. T. Parrott in the sum of $2,625; check payable to the Taylor National Bank in the sum of $500, with the designation on the face of the check— "for note." As a result of these withdrawals the books of the Taylor National Bank showed a balance in the individual account of Morton, as of the close of business of September 11, 1931, of $1,267.83. The Taylor County warrant remained in the possession of the Taylor National Bank at all times from September 11, 1931 until the appointment of the plaintiff as Receiver for said bank on August 24, 1937, and after its appointment as Receiver the plaintiff continued to hold possession of said warrant until it collected and received from Taylor County, Kentucky, the principal of said warrant in full on July 19, 1938. The

Taylor National Bank and the plaintiff as its Receiver collected interest from Taylor County, Kentucky, upon the face amount of said warrant at the rate of 6% per annum from March 21, 1931 to July 19, 1938. The sale of the Taylor County warrant to the Taylor National Bank by T. O. Morton as Committee of John Catron was with the fraudulent intent on the part of Morton to convert said warrant and its proceeds to his own use. The account of T. O. Morton, Committee, received from Morton personally an amount in cash equal to the interest paid by Taylor County on the warrant for the period of March 21, 1931 to October 15, 1935. On October 15, 1935 Morton as Committee purported to sell the Taylor County warrant and replace it with United States Treasury Bonds, 3¼% and so indicated by his records as said Committee. His account as said Committee received interest on these bonds from Oct. 15, 1935 to April 15, 1936.

On November 1, 1937 by order of the Taylor County Court, T. O. Morton was removed as Committee of John Catron, and Ralph T. Garnett was appointed as successor Committee of John Catron, gave bond with proper surety and duly qualified as such Committee. The only assets of the estate of John Catron turned over to said Garnett as his Committee were (a) a checking account in the sum of $111.55 in the Taylor National Bank; (b) a checking account in the sum of $40 in the Taylor National Bank. Thereafter Ralph T. Garnett, the successor Committee, instituted an action against the American Surety Company of New York on its bond as surety for T. O. Morton, Committee of John Catron, and on March 9, 1938 judgment was rendered by the Taylor County Court in said action in which it was ordered and adjudged that Ralph T. Garnett, Committee of John Catron, incompetent, recover of American Surety Company of New York the sum of $17,507.21; that American Surety Company of New York be subrogated to all the rights of Garnett, the successor Committee, against the Taylor National Bank; and that upon the payment of the aforesaid amount Garnett as said Committee should execute and deliver to the American Surety Company of New York an assignment of any and all claims that Garnett as said Committee had or might have against the Taylor National Bank by reason of its dealings with the assets of the estate of John Catron. On March 9, 1938 the American Surety Company of

New York paid to Garnett as such Committee the sum of $17,507.21 which included the loss to the estate on account of the Taylor County warrant. At that time Garnett executed and delivered to the Surety Company the assignment referred to. This settlement was based on the assumption that the U. S. Government bonds had been held by the Committee on and after October 15, 1935, as shown by the Committee's records, and the estate was entitled to interest as called for by that investment instead of the interest as was paid by the Taylor County warrant. The settlement included the sum of $731.25 as interest on $15,000 Treasury Bonds, 3¼%, unaccounted for by the Committee. Of this amount, $380.37 is the pro rata part applicable to principal amount of the Taylor County warrant reinvested in these bonds.

On September 26, 1933 the defendant American Surety Company of New York, in consideration of a premium paid to it and of an annual premium to be paid thereafter, issued and delivered to the Taylor National Bank its Bankers Blanket Bond wherein the Surety Company agreed to indemnify the bank against the direct loss sustained while the bond was in force in an amount not exceeding $15,000 caused through any dishonest act of any employee of the bank, whether acting alone or in collusion with others. On May 11, 1936, in consideration of additional premium paid and to be paid by the insured the American Surety Company increased the coverage under the bond from $15,000 to $25,000 as to all losses sustained after April 27, 1936. Said bond was in full force and effect from September 25, 1933 until the closing of the Taylor National Bank of Campbellsville, Kentucky, on June 30, 1937. During the currency of said bond T. O. Morton was a salaried officer, director and manager of the insured bank with his office in Campbellsville, Kentucky. While the bond was in force the Taylor National Bank sustained direct loss through dishonest acts committed by T. O. Morton acting alone and in collusion with others. Said loss amounted to a sum in excess of $149,196.45 of which amount the sum of $77,796.45 was sustained under the bond providing for a penal sum of $15,000 dated September 26, 1933, while a remaining loss of $71,500 was sustained under the bond as increased to the penal sum in the amount of $25,000 as of April 27, 1936. Following the appointment of the plaintiff as Receiver, it promptly gave the defendant notice, as required by the bond, of said losses and furnished to the defendant executed proofs of claim therefor, which proofs the defendant accepted. Following an investigation of the claim presented by the plaintiff the defendant on July 13, 1938 paid to the plaintiff the sum of $13,991.94, leaving an unpaid balance on said claim of $11,008.06. This unpaid balance of $11,008.06 is made up of the principal amount of the Taylor County warrant hereinabove referred to, namely, $7,802.53, together with interest thereon at the rate of 6% per annum from September 11, 1931 to July 13, 1938, which total amount of $11,008.06 is claimed by the defendant as an offset against its liability to the plaintiff under its Bankers Blanket Bond hereinabove referred to.

### Conclusions of Law

The transactions of September 11, 1931 by which Morton as Committee for John Catron sold to the Taylor National Bank the Taylor County warrant in the amount of $7,802.53, belonging to the Catron estate, a deposit by the bank of the proceeds of this sale to the individual checking account of T. O. Morton, and the subsequent use of these proceeds by Morton for his private purposes, was a fraudulent conversion by Morton of these assets of the Catron estate, for which the bank is liable to the Catron estate, if it had knowledge of the facts. Taylor v. Harris' Administrator, 164 Ky. 654, 176 S.W. 168; Farmers' & Traders' Bank of Shelbyville v. Fidelity & Deposit Co. of Maryland, 108 Ky. 384, 56 S.W. 671; Mitchell v. First National Bank, 203 Ky. 770, 263 S.W. 15; Louisville Trust Company v. Royal Indemnity Company, 230 Ky. 482, 20 S.W.2d 71. Such a liability would not exist unless the bank receives the deposit or pays the check with knowledge that the fiduciary is committing a breach of his obligation as such fiduciary or with knowledge of such facts that its action in paying the check amounts to bad faith. Kentucky Statutes, Section 4711-8. In the present case such knowledge on the part of the bank, if such is to be attributed to it, would be because of the rule that knowledge on the part of Morton, its President and agent, would be chargeable to the bank as his principal in the transaction. It is well settled that a principal is ordinarily chargeable with the knowledge acquired by his agent in executing the agency and is subject to the liabilities which such knowledge imposes.

■■ The general rule that knowledge on the part of an agent is imputed to his principal is subject to the well-recognized exception that the agent's knowledge will not be imputed to his principal where the agent is acting adversely to the interests of his principal. Under these conditions there is a presumption that since he is acting adversely to the interests of his principal he would not communicate the fact of the controversy to his principal but would for that reason alone probably conceal the facts from the principal. Randolph v. Ballard County Bank, 142 Ky. 145, 134 S.W. 165; Ohio Valley Banking & Trust Company v. Citizens' National Bank, 173 Ky. 640, 191 S.W. 433; Owsley County Deposit Bank v. Burns, 196 Ky. 359, 244 S.W. 755; Taulbee v. Hargis, 173 Ky. 433, page 445, 191 S.W. 320, Ann.Cas.1918A, 762; American National Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310; Thomson-Houston Electric Co. v. Capitol Electric Co., 6 Cir., 65 F. 341. However, this exception is not applicable under any one of the three following circumstances: (1) Where the interested official is the sole representative of the two contracting parties; (2) where the corporation benefits by the transaction; and (3) where the interested agent acts for the principal, instead of dealing with him in which case, the presumption of communication obtains. Ohio Valley Banking and Trust Company, 173 Ky. 640, at pages 653 and 654, 191 S.W. 433; Citizens' Savings Bank v. Walden, 52 S.W. 953, 21 Ky. Law Rep. 739; Mutual Life Insurance Company v. Chosen Friends' Lodge, 93 S.W. 1044, 29 Ky.Law Rep. 394; Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956; Anderson v. Missouri State Life Ins. Co., 6 Cir., 69 F.2d 794, at page 798; Schneider v. Thompson, 8 Cir., 58 F.2d 94; Bosworth v. Maryland Casualty Co., 7 Cir., 74 F.2d 519; Munroe v. Harriman, 2 Cir., 85 F.2d 493, 111 A.L.R. 657; Federal Deposit Ins. Corp. v. Vest, D.C.E.D. of Ky., 28 F.Supp. 507; Hooker v. New Amsterdam Cas. Co., D.C., W.D. of Ky., 33 F.Supp. 672; see Annotation in 111 A.L.R. beginning at page 665. See also Skud v. Tillinghast, 6 Cir., 195 F. 1; Kean v. National City Bank, 6 Cir., 294 F. 214; Wasmann v. City National Bank, 6 Cir., 52 F.2d 705, 706. The facts of the present case bring it under the first qualification above referred to. Morton as the Committee for John Catron was the sole representative of the estate of the incompetent. He was also the sole representative of the Taylor National Bank in the transaction. His position by which practically all of the stock of the Taylor National Bank was owned by himself or by members of his family made him the dominating personage in the bank. It was a typical one-man bank. The "sole actor" doctrine as discussed and referred to in the foregoing cases is applicable to the present case. By reason of these facts and the law applicable to them the Taylor National Bank became liable to the estate of John Catron for the assets of said estate so converted by Morton to his own use.

■ The remaining question for decision is whether or not the American Surety Company upon payment of this loss to the Catron estate became subrogated to the claim of the Catron estate against the Taylor National Bank. Subrogation is a creature of equity, and rests upon principles of natural justice. It is the substitution of a new for an old creditor, or, in its more general sense, the act of putting by a transfer, one person in the place of another. By the transfer the substituted or new creditor is subrogated to all the rights of the original creditor. It is generally held that the right of subrogation will arise where the party claiming it has advanced money to pay a debt which in the event of default by the debtor he would be bound to pay; or where the one making the payment had some interest to protect; or where the money advanced to pay the debt was under an agreement with the debtor, or the creditor, express of implied, that he should be subrogated to the rights and remedies of the creditor. There are two limitations to the doctrine as thus broadly stated: First, a surety is not entitled to subrogation until he has paid the debt; and, secondly, a volunteer is not so entitled. Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S.W. 844, L.R.A.1918A, 931; Probst v. Wigginton, 213 Ky. 610, 281 S.W. 834; Louisville Stock Joint Land Bank v. Bank of Pembroke, 225 Ky. 375, 9 S.W.2d 113; Vance v. Atherton, 252 Ky. 591, 67 S.W.2d 968. Since it is governed by general equitable principles it should not be arbitrarily granted, but should be enforced with due regard to the rights of others and should not be invoked to work injustice or to defeat superior equities of others. Maryland Casualty Co. v. Walker et al., 257 Ky. 397, 78 S.W.2d 34; William Burford & Co. v. Glasgow Water Co., 223 Ky. 54, 2 S.W.2d 1027.

■ Since the doctrine of subrogation is essentially a creature of equity and is called into play only when it is necessary to bring about an equitable adjustment between the parties, it will not be invoked where liability exists by virtue of a harsh common-law rule and its application is sought by a surety who has been paid to protect against such a loss. Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71; American Bonding Co. v. First National Bank, 85 S.W. 190, 27 Ky.Law Rep. 393. But the right of subrogation will not be denied merely because the surety is a compensated corporate surety, although this fact may be considered in balancing the equities. United States Fidelity & Guaranty Co. v. Mayo Arcade Corp., 253 Ky. 763, 70 S.W.2d 531; American Surety Co. v. Noe, 245 Ky. 42, 53 S.W.2d 178; United States Fidelity & Guaranty Co. v. McGinnis' Adm'r, 147 Ky. 781, 145 S.W. 1112; Lewis' Adm'r v. United States Fidelity & Guaranty Co., 144 Ky. 425, 138 S.W. 305, Ann.Cas.1913A, 564. While subrogation in the case of a paid surety might be properly denied where liability to the principal exists only because of want of due care on the part of a bank, yet the equities are entirely different where the bank not only had knowledge of the fraud being perpetrated but assists the defrauding party in so doing. In such a case subrogation should be granted to bring about an equitable adjustment between the parties. National Surety Corporation v. First National Bank, 278 Ky. 273, 128 S.W.2d 766.

■ One who is indebted to a National Bank before it becomes insolvent, may not, after the bank has become insolvent, purchase a common claim against the bank and use it as an offset, dollar for dollar, against an obligation owed to the bank. United States Fidelity & Guaranty Co. v. Wooldridge, 268 U.S. 234, 45 S.Ct. 489, 69 L.Ed. 932, 40 A.L.R. 1094; Springfield National Bank v. American Surety Co., 6 Cir., 7 F.2d 44. But this rule does not prevent a debtor of a national bank after insolvency from being subrogated to a claim against that bank which existed prior to insolvency, and which the debtor was required to pay by operation of law. Under these conditions the debtor is not voluntarily purchasing a claim against the bank to use as an offset; he is being required by operation of law and on account of a pre-existing contract obligation to do the acts which entitle him to enforce the claim against the bank. This situation is essentially different from the voluntary purchase of a claim against the bank after insolvency for the purpose of using it as an offset.

■ If the American Surety Company is entitled to subrogation to the claim of the Catron estate against the Taylor National Bank, that right should not be defeated by the fact that the same American Surety Company is also the surety on a fidelity bond to the Taylor National Bank in an entirely separate transaction. Its right of subrogation should not be defeated because the claim can be used as an offset. If the bank was not insolvent, it could collect the claim from the bank in cash. Using it as an offset to a liability arising out of an entirely separate transaction does not better its position. If subrogation exists, the question of whether the claim can be used as an offset or must share in dividends as a general creditor, depends upon independent principles of law. It is a well-established principle of law that a debtor of an insolvent national bank can offset dollar for dollar against the claim of the bank any bona fide claim which the debtor held against the bank prior to insolvency, instead of being required to accept merely dividends upon his claim against the bank. Bryant Brothers v. Wilson, Bank Com'r, 253 Ky. 578, 69 S.W.2d 1020; Nomland v. First National Bank, 8 Cir., 64 F.2d 399; Rickey v. New York State National Bank, D.C., N.D.N.Y., 7 F.Supp. 29, affirmed 2 Cir., 70 F.2d 1020; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; Shannon v. Sutherland, Receiver, 4 Cir., 74 F.2d 530, 97 A.L.R. 583 and annotation following at page 588.

■ Under the facts of the present case the Court is of the opinion that the American Surety Company is entitled to be subrogated to the claim of the Catron estate against the Taylor National Bank, and that this claim can be used as an offset, dollar for dollar, against the claim which the Taylor National Bank has against it by virtue of its liability under the Bankers Blanket Bond herein sued upon. Farmers' & Traders' Bank v. Fidelity & Deposit Co. of Maryland, 108 Ky. 384, 56 S.W. 671; Fidelity & Deposit Co. of Maryland v. Commonwealth, 249 Ky. 170, 60 S.W.2d 345; Taylor v. Harris' Adm'r, 164 Ky. 654, 176 S.W. 168; Hill v. Fleming, 128 Ky. 201, 107 S.W. 764, 16 Ann.Cas. 840; United

States Fidelity & Guaranty Co. v. Union Bank and Trust Co., 6 Cir., 228 F. 448. The amount of the offset is the actual amount which the American Surety Company was required to pay by law to the Catron estate, including both principal and interest by reason of the conversion of the Taylor County warrant. Under the facts of this case this amount is found to be principal in the amount of $7,802.53 and interest thereon in the amount of $380.37, making a total amount of $8,182.90.

The plaintiff is entitled to judgment in the amount of $2,825.16, with interest and costs.