JUDGE PBYOB
delivered the opinion oe the court.
On the 9th of May, in the year 1839, James S. Prather, of the city of Louisville, by an assignment and ^conveyance of record, vested in William Prather, Charles Way, and John Joyes the title to certain real estate and choses in action therein described, to be held by them in trust for the payment of his debts, and then held in like manner for the use and benefit (after his death) of his widow, should she survive him, and his children, and upon the death of both the grantor and his wife to be equally divided between the children. After the death of the grantor his widow, Louisa Prather, in conjunction with the children, including the husbands of her two daughters, on the 14th of September, 1866, united in a conveyance of certain portions of this trust-estate to Sam’l P. Weissiger and E. D. Tyler for and in consideration of certain. notes executed by *122 the grantees for the purchase-money and particularly described in the deed. ' One of the children of James S. Prather had been absent at the date of the execution of this deed for many years, and therefore failed to join in the conveyance. The purchasers, Weissiger and Tyler, not being satisfied with the title made by the widow and children, who were only the beneficiaries of the trust, proceedings were instituted in the Louisville Chancery Court for the purpose of perfecting the title by obtaining a conveyance from the trustees.
The trustees, under the deed of 1839, by virtue of this judicial proceeding, and in accordance with the decree of the chancellor, in August, 1867, made to the purchasers a deed ratifying and confirming the deed made by Louisa Prather and her children in September, 1866. It was also adjudged in that proceeding that Worden P. Prather, the son who had not been heard from for many years, was civiliter mortuus, and the trustees, Way, Prather, and Joyes, were directed to collect and hold his interest in the proceeds of sale until the further order of the cou'rt. On the first of October, 1869, the trustees, on their motion, were relieved by the chancellor from this duty— viz., of collecting and holding the money —and no further order, so far as the record shows, was made in regard' to it.
Mrs. Mitchell and Mrs. Hunt, two of the daughters of the original grantor, James Prather, upon application to the chancellor, had their interests in the proceeds of the sale of this trust-property set apart as their separate estate for their own use and benefit, and Edward Mitchell, the husband of one of the daughters, was made trustee, with authority to loan and invest the same as the two daughters might in writing direct.
Weissiger and Tyler, the purchasers from Louisa Prather and her children, executed six notes for the purchase-money, the two last notes for six thousand dollars each. The deed made retains a lien for the payment of these notes, but no trust of any sort appears on the face of this instrument with refer *123 ence to the property conveyed or its proceeds. All of the notes were made payable to E. Mitchell in his own right, except one of the notes for six thousand dollars, the subject-matter of this controversy. This note reads:
$6,000. Louisville, September 1, 1866.
“Five years after date we promise to pay to the order of E. Mitchell, trustee, six thousand dollars, with interest from date, for value received. This is one of the notes mentioned in deed from Louisa W. Prather, &c., to us, and is a lien note.
Sam’l P. Weissiger,
E. D. Tyler.”
And indorsed as follows:
“ Pay David Frantz & Son, or order..
E. Mitchell, Trustee,
Blanche Mitchell.”
The note was deposited by E. Mitchell, trustee, to whom it had been executed, with his brother, C. N. Mitchell, the cashier of a bank at Lebanon, three years prior to its maturity, as collateral security for the payment of nearly four thousand dollars the former had borrowed. C. N. Mitchell afterward, and without the consent of his brother, so far as this record shows, sold this note through a real-estate agent in the city of Louisville to Frantz & Son for five thousand eight hundred dollars.
The present action in equity was instituted by Louisa Prather'and her children, among them Blanche Mitchell (the wife of E. Mitchell, the trustee) against Frantz & Son, Weissiger and Tyler (the payors in the note), and Edward Mitchell to recover the amount of the note and interest, alleging that it constitutes a part of the original trust-fund, and was held by Mitchell in trust for their use, etc.; that he had no right to dispose of it, and if as trustee he has sold it to Frantz ■& Son, *124 it was in direct violation of the trust, a breach of his official duty, and a fraud upon their rights; that if Frantz & Son hold or claim the note as purchasers, they had notice of the trust, and are as much in fault as their trustee.’ They also allege the insolvency of the trustee, and that they have received no part of the money.
The defendants, Frantz & Son (appellees), for defense deny that Mitchell was trustee for any of the plaintiffs except his wife, Blanche Mitchell, and that as her trustee, and when rightfully in possession of the note, and in the exercise of his legal right as holder and owner, assigned and transferred the same to the defendants by the joint indorsement of himself and wife. They deny all fraud or any knowledge whatever of the trust except such as might be implied from the use of the word trustee in the body of the note, and insist that the indorsement by Mitchell and wife and the payment of the money vested them with the absolute right to collect and apply the proceeds of the note for their own purposes, etc.
The chancellor upon the final hearing dismissed the petition, of which Louisa Prather and her children now complain.
There is nothing in the record showing that Edward Mitchell as trustee, or any of the beneficiaries of this trust, ever received one dollar of the money paid by Frantz & Son, the whole evidence warranting the conclusion that it was paid to C. N. Mitchell, the cashier of the bank at Lebanon, in discharge of the debt due by Edward Mitchell, to secure the payment of which this note had been pledged. It is also evident that the indorsement of E. Mitchell as trustee and Blanche Mitchell was left blank, and afterward made payable to Frantz & Son. Edward Mitchell says he never transferred the note to these parties, or had any transaction -whatever with them in regard to it.
The attorney, who seems to have been the legal adviser of the purchasers of the trust-property, states that “ the lot sold *125 being a part of the trust-estate, in order to protect his clients against the claim of Worden Prather (the absent son), in the event he should'return, it was agreed that his interest should be included in the last note, and in drawing it made it payable to the order of E. Mitchell, trustee; that Mitchell seemed to have control of the business for Mrs. Prather and her children, and it was intended that Mitchell should be appointed trustee in the stead of Way, Prather, and Joyes.” E. Mitchell in his statement says “ that he was to hold the note as trustee for Worden Prather if he returned, and if not, in trust for Mrs. Prather and her children.”
That the note was a part of the proceeds of the trust-estate embraced by the deed of 1839 is conceded, and- the mere change of the character of the estate from real to personal did not destroy the trust or change the fiducial relation between the trustees and the wife, and children of James Prather.
It is true these trustees assented, by acquiescence at least, to a distribution of the proceeds of a portion of the trust-property between Mrs. Prather and her children; but as to 'Worden Prather’s interest, as well as the interests of the married women, the aid of the chancellor was invoked for the protection of the rights of each. The chancellor, it seems, relieved the trustees from taking charge of Worden Prather’s interest, for the reason, no doubt, of the previous understanding that E. Mitchell was to be appointed trustee in room of Way, Prather, and Joyes.
There is no doubt of the existence of the trust, and whether it was for the benefit of Worden Prather, to protect his fights under the original deed, or for the benefit of Louisa Prather and her children, is immaterial, as the son (Worden Prather) had been absent and unheard of for many years; and these appellants, being the remaining beneficiaries and' also his next’ of kin, had the right to resort to a court of equity to prevent the appellees from collecting the note in controversy.
*126 The important question in the case is, did the appellees, Frantz & Son, have notice of the trust or such evidence of its existence as should have put them on the inquiry as to the manner of the holding by Mitchell before making the purchase ?
If the note could be classed with negotiable paper, passing by delivery or indorsement, and not subject to any set-off or affected by the equities of third parties, there would be but little trouble in the solution of the question involved. The statute of the state authorizing the transfer and assignment of such paper so as to vest the assignee with the legal title, reserving all equities in favor of the maker before notice of the assignment, does not give to such paper any of the negotiable qualities of a bill of exchange or other negotiable paper; nor-does the language of this enactment, either expressly or by implication, authorize the conclusion that it was intended to go further than to afford the assignee a remedy at law, and to invest him with the rights of one having the legal title. No rule of law or equity has been changed. An assignee having acquired the legal title for a valuable consideration without notice of the existence of any equity, becomes the absolute owner of the note and its proceeds, subject only to the defenses the maker has or may acquire before notice of the assignment. This has always been the well-settled doctrine as between the equitable claimant and one holding the legal title, the effect of the statute being to enable the party acquiring the legal right to a chose in action to bring himself within the rule by which he may contest successfully the equitable claim, upon the ground that he is a purchaser in good faith without notice.
It was for a long time a mooted question whether at common law promissory notes were negotiable or not, and to settle it the statute of Anne was enacted, making such paper negotiable, and subject, like inland bills of exchange, to .the law merchant. *127 The Kentucky statute of assignments does not go so far, and such notes have never been held or treated in this state as commercial paper, or used, like bills of exchange, as a circulating medium in mercantile or commercial transactions. In the case of Caruth v. Thompson (16 B. Mon. 575); relied on by counsel for the appellees, it was adjudged that the holder of a mere promissory note was authorized to fill up the blank indorsement and collect the money, the facts appearing that the notes had been indorsed in blank to enable the holder to collect. In such a case the purchaser in good faith becomes the absolute owner. There is a dictum in that opinion, based upon the doctrine laid down in Story on Promissory Notes, where that author is treating of such paper as negotiable by reason of the statute of Anne and similar enactments in several of the American states, to the effect “ that if a bill or note with a blank indorsement is lost or stolen, etc., any person who becomes the holder in good faith for value and without notice is entitled to recover.” This is doubtless the law with reference to negotiable paper, but can not apply to mere choses in action that are non-negotiable.
If such a note is executed and delivered to one, he holds and owns it as any other personal property; and if lost or stolen, whether with his name indorsed or not, he can after demand and refusal of the finder or the purchaser from the latter in good faith maintain what at common law would be called an action of detinue or replevin for its recovery, or an action of trover and conversion. The purchaser before he can acquire the legal title must obtain it from one in whom such title is vested, or who has the right to pass it by reason of some authority given by the owner; and when thus acquired in good faith and for a valuable consideration he will not be disturbed in favor of an equity of which he had no notice, actual or constructive.
The trustee, E. Mitchell, held the note in controversy for *128 the appellants, and was cognizant of the entire history, of this trust-property. He had violated the trust by pledging this note for the performance of his individual obligations. He acted recklessly in making a blank indorsement upon it, by which the’ brother was induced to place it upon the market, that himself or both might misapply the proceeds and deprive the oestui que trusts of all interest in it.
The appellees may have purchased the note, and no doubt did so, under the belief that the agent of C. N. Mitchell had the right to dispose of it; still they had before them, upon the face of the note itself, such evidence of the existence of a trust as was sufficient to put one of ordinary prudence on the inquiry; and if so, the law presumes they had constructive notice of the character of the holding by Mitchell, as well as the existence of the original trust out of which this note originated. This note is payable to E. Mitchell, trustee, and indorsed by E. Mitchell, trustee, saying to the purchaser the payee is holding this note not in his own right, but for the benefit of some person or persons unknown to us; and, what is more remarkable, is offered in the market and sold by an agent of C. N. Mitchell, the note disclosing no interest in the latter, and not even his name upon it as indorser. If inquiry had been made of E. Mitchell, C. N. Mitchell, or any of the grantors of the lot for which the note was given, the appellees could have known the history of this trust, and ascertained the risk they were assuming in making such an investment.
The deed to Weissiger and Tyler does not, it is true, disclose the existence of the trust; but there is nothing on its face showing any interest in Mitchell, or why the note was made payable to him as trustee — facts that, instead of stopping inquiry, should have' urged the appellees to obtain additional information before purchasing the trust-property. The note itself pointed to those who had passed the legal title, and one of ordinary prudence ought at least to have made inquiry of *129 some of the parties as to the right of Mitchell or his agent to dispose of it.
The appellees, with so many avenues opened to them for information, saw proper to risk the speculation, and in this controversy between them and the real owners must sustain the loss.
The case of Shaw v. Spencer (100 Massachusetts, 382) is very similar to the present case. Two certificates of stock in a mining company were issued in the name of E. Carter, trustee, and by him transferred in blank. Spencer, Villa & Co. received these certificates as stock thus indorsed as collateral security for a debt due them by Mellen, Ward & Co.Spencer, Villa & Co. paid a fair consideration for the stock, and had no other notice of the trust than that implied from the words E. Carter, trustee. The court, in delivering the opinion, says, “It means trustee for one whose name is not disclosed, and there is no greater reason for assuming that a trustee is authorized to pledge for his own debt the property of an unnamed cestui que trust than the property of one whose name is known; in either case it is highly improbable that the right to do so exists, inasmuch as such an act of pledging property is prima facie unlawful. There would be little hardship in imposing on the party who takes the security not only the duty of inquiry, but the burden of ascertaining the actual facts at his peril. Notice of the existence of a trust is by all the authorities held to impose the duty of inquiring as to its character and limitations.” The same principle is announced in a recent case reported in 15 Wallace, 171, of Duncan v. Jaudon.
In Byles on Bills, page 225, it is said, “ If a depositary of a bill indorse it in breach of trust, the indorser with notice of the breach of trust can acquire no title to the bill as against the rightful owner, and can neither sue him on the bill nor hold the bill against him.”
*130 It is maintained by counsel that the appellees, having a junior equity, as well as the legal title, must be protected as against the senior equity. It is true that the legal title was in Mitchell, the trustee, and the equitable title in appellants; but the appellees had no junior equity as against these beneficiaries, for the reason that the former had notice of the trust. The want of notice on their part, which alone creates this junior equity, not only fails to appear from the record; but, on the contrary, notice, or the means of knowing by the exercise of ordinary diligence who the beneficiaries of this note were, is clearly shown, and therefore these appellees, like Mitchell, the trustee, are vested with the mere naked legal title, occupying no better position, and holding the note in the same manner as Mitchell himself did. (Miller v. Edwards, 7 Bush, 398.)
“ Equity will follow the legal estate, and decree the person in whom it is vested (not being a purchaser for a valuable consideration without notice, or otherwise entitled to protection) to execute the trust.” (2 Story’s Equity, 241.) “Those circumstances which are sufficient to put a purchaser upon an inquiry which would lead to a discovery of the trust will be deemed a good constructive notice of it.” (Tiffany and Bullard on Trusts, 821.)
The rights of Blanche Mitchell, the wife of E. Mitchell, can not 'be prejudiced by the attempted transfer on the part of the husband of her equitable interests in this note. By .the terms of the original trust there was to be no distribution or division of the trust-estate until the death of Mrs. Prather, and there has been no act on the part of Mrs. Mitchell that constitutes a surrender (if she had the power to do so) of her rights acquired by virtue of this trust; but, on the contrary, upon the confirmation by the chancellor of the sale to "Weissiger and Tyler, she on the 12th of July, 1867, by a judgment of the Louisville Chancery Court, had her interest protected by having her share of the proceeds adjudged to *131 be ber separate estate, and depriving the husband, who was made her trustee, from making any investment of it without her written direction. She derived no benefit whatever from the pledge of the note to C. N. Mitchell; and neither herself nor her husband, so far as the proof shows, knew of the transfer to the appellees.
This note was not purchased by Frantz & Son until the 9th of December, 1868. There is no evidence conducing to show that she ever consented that her interest in this estate should be subjected to the payment of her husband’s debts, or that she even knew prior to the institution of this • action that it had been pledged to C. N. Mitchell. An investment of this character she was seeking to prevent when she applied to a court of equity for the protection of her rights. The pledge made by her husband of her separate estate held by him in trust for the payment of his own debt is no more obligatory on her by reason of the indorsement on the note than if her name was not upon the paper; nor will a court of equity sanction such a misapplication of the trust-fund. The chancellor would have interfered, at the instance of the wife, to prevent such a flagrant abuse of the trust; and so long as the trust-property can be reached will maintain the trust inviolate, by compelling a surrender of the trust-estate to satisfy the equitable claim of the wife.
The’notice of the manner of the holding by the husband followed the note in his hands, or that of his assignee, as much for the protection of the rights of the wife as that of the other appellants in the action. This note was purchased by the appellees not from the husband, but from one who held it as collateral security, with no right, either in the one depositing the security or the depositary, to dispose of it. It had nearly three years to run before its maturity; and, regarding it as held in trust for the wife alone, the insolvent husband had no power to appropriate it by an assignment for the payment of *132 his own debts so as to defeat the rights of the wife, who -has survived the husband, and is now attempting to have an equitable settlement out of it, and that too when the legal presumption of notice on the part of the creditor or purchaser as to her rights is conclusive. Nor would the chancellor, if the husband was alive, hestitate to enforce her claim. (Dunn v. Lancaster, 4 Bush; Wright v. Arnold, 14 B. Mon.)
Judges Peters and Lindsay do not concur in that part of the opinion giving to Blanche Mitchell, the wife of the trustee, an interest in the note in controversy. In their opinion the equity of Frantz & Son, by reason of the blank indorsement by the wife, is superior to the claim she is now asserting, and she is precluded from controverting their title.
The chancellor having dismissed the petition in the court below, the result is that the judgment as to Blanche Mitchell must be affirmed, and is reversed as to the other appellants for further proceedings consistent with this opinion.