## Taylor v. Harris' Administrator, et al.

## First National Bank of Paducah v. Same.

(Decided May 14, 1915.)

### Appeals from Crittenden Circuit Court.

1. Executors and Administrators—Action to Settle Decedent's Estate—Who Necessary Parties.—In an action by the administrator of a decedent and the present guardian of an infant of whom the decedent was guardian at the time of his death, brought against his heirs at law, creditors and the surety in his bond as guardian, for a settlement of the estate, his accounts as such guardian, and to recover for the present guardian the amount due the ward; certain claimants and holders of parts of the trust fund belonging to the estate of such ward, which they had wrongfully received from the decedent as guardian and aided him in misappropriating, were, under section 428, subsection 2, Civil Code, necessary parties to the action and were properly made so by an amended petition and the cross-petition of the surety in the bond which had been given by the decedent as guardian.

2. Executors and Administrators—Action to Settle—Venue of Such Action—Jurisdiction of the Court in.—Sections 65-67, Civil Code, fix the venue of this action in the county in which the personal representative of the decedent qualified and in which the decedent

qualified as guardian of his ward. Therefore the action was properly brought in the Crittenden Circuit Court; and it is a well-known rule that where jurisdiction for one purpose properly attaches, the court will grant full relief among the parties on all pertinent questions that may arise in the case, even though some of the questions may be merely incidental to the action; hence, a bank, claiming and holding a part of the trust estate which it had wrongfully obtained from the decedent as guardian of his ward, being directly interested in the subject matter of the action, was properly made to account therefor in this action, although such bank is situated and does business in McCracken County.

3. Trusts—Trust Funds—When A Constructive Trust Will Arise From A Purchase or Borrowing of.—A constructive trust will arise from a purchase of personal property from a trustee, or from the borrowing of a trust fund from such trustee, when the purchaser or borrower knows the transaction will constitute a violation of the trust under which the property was held by the trustee; as in such case the purchaser or borrower, with notice of the trust, will be charged with the same in respect of the property or money, as would the trustee from whom he purchased or borrowed it; and upon taking the property or money with notice of the trust, such purchaser or borrower in law becomes a trustee; and as long as the trust property or fund can be followed and identified, in whosesoever hands it may go, except into those of a bona fide purchaser or taker for value and without notice, the court will enforce the constructive trust for the benefit of the cestui qui trust who has been defrauded.

4. Guardian and Ward—Sale By Guardian to Bank of Note Payable to Himself as Such—Conversion of Proceeds of Note to Himself—Bank Liable for.—Where a guardian, holding a note representing guardianship funds and payable to him as guardian, sold it to a bank and the bank, by his direction, deposited the proceeds of such sale to his individual credit and permitted him to check it out in payment of his individual debts; such disposition of the note and its proceeds constituted a conversion of same to the individual use of the guardian and made the bank equally liable with the surety in the bond of such guardian to the ward and his present guardian for the note or, if not to be had, its proceeds, and it was properly held accountable therefor.

A. C. & V. Y. MOORE and GORDON, GORDON & COX for appellant, Taylor.

J. D. MOCQUOT for appellant, First National Bank of Paducah.

JOHN C. GATES for appellees.

Opinion of the Court by Judge Settle—Affirming.

These two appeals, though prosecuted separately by the appellants, C. W. Taylor and First National Bank of

Paducah, are both from the one judgment of the Crittenden Circuit Court, rendered in an action first brought by the appellee, Zed A. Bennett, administrator of the estate of J. B. Harris, deceased, and People's Bank & Trust Company, guardian of Foster Lee Threlkeld, against the appellee, Empire State Surety Company, the heirs-at-law of J. B. Harris, and certain creditors of his estate. The primary object of the action was to obtain a settlement of the decedent's estate and to recover of the appellee Empire State Surety Company, as surety in the bond of J. B. Harris, former guardian of Foster Lee Threlkeld, in behalf of the present guardian of the infant, the amount of the latter's estate, with which Harris, as guardian, was chargeable at the time of his death; it being alleged in the petition that the estate of Harris was insolvent.

The answer of the Empire State Surety Company was made a cross-petition against Zed A. Bennett, administrator of the estate of J. B. Harris, deceased, and the appellants, C. W. Taylor and First National Bank of Paducah. After the filing of the Empire State Surety Company's answer and cross-petition, C. W. Taylor and the First National Bank of Paducah were, by an amended petition, also made defendants to the original action.

It appears from the facts set forth in the petition and cross-petition that J. B. Harris was on May 27, 1900, by an order of the Crittenden County Court, appointed statutory guardian of his infant stepson, Foster Lee Threlkeld, and duly qualified as such, the appellee, Empire State Surety Company, becoming surety in his bond. Harris died September 21, 1911, childless and intestate, and the appellee, Zed A. Bennett, by order of the Crittenden County Court, was duly appointed and qualified as the administrator of his estate. At the same time the appellee People's Bank & Trust Company, of Marion, was duly appointed and qualified as statutory guardian of the infant Foster Lee Threlkeld.

In the appellee Empire State Surety Company's answer to the petition, which, as previously stated, was made a cross-petition against the administrator of Harris, the appellants, C. W. Taylor and First National Bank of Paducah, and certain other persons, it was, among other things, alleged, in substance, that of the $6,000.00 constituting the estate of the infant Foster Lee Threlkeld, which went into the hands of J. B. Harris, deceased, as guardian, he had, with the connivance

and assistance of the appellant, C. W. Taylor, fraudulently appropriated and conveyed to his own use $3,000.00, and, with a like fraudulent purpose, with the connivance and assistance of the appellant, First National Bank of Paducah, appropriated and converted the remaining $3,000.00 to his own use; it being averred that Harris and Taylor entered into a secret agreement whereby Taylor, on July 5, 1909, unlawfully borrowed from Harris, as guardian, the $3,000.00 and executed to the latter his note therefor, bearing interest at the rate of six per cent per annum, secured by mortgage of the same date on a tract of land; and simultaneously loaned, or pretended to loan, to Harris individually the same $3,000.00, for which Harris then executed to Taylor his personal note, bearing interest at the rate of eight per cent per annum, secured, or purporting to be secured, by a chattel mortgage executed at the same time on Harris' stock of goods and merchandise at Tolu, Kentucky; both mortgages being immediately put to record in the office of the clerk of the Crittenden County Court. It was further alleged in the answer and cross-petition that the loan from Harris, as guardian, to Taylor had never been paid by the latter to the former or present guardian of Foster Lee Threlkeld, and judgment was prayed against Taylor for the benefit of the present guardian for the $3,000.00 and interest, claimed to be due on the note executed by Taylor to Harris.

It was further alleged in the answer and cross-petition of the appellee, Empire State Surety Company, that the $3,000.00 for which it was sought to hold the appellant, First National Bank of Paducah, liable was loaned by J. B. Harris, as guardian, from the estate of his ward, Foster Lee Threlkeld, to one O. B. Davis; that he took Davis' note therefor, maturing in three years, bearing six per cent. interest from date, payable to himself as guardian, and received as security for its payment a mortgage upon real estate of greater value than the debt, which was duly executed by Davis and wife and immediately thereafter recorded in the office of the clerk of the Crittenden County Court; that this note was later assigned and discounted by Harris, as guardian, to the First National Bank of Paducah and its proceeds, less the discount, deposited by the bank to his individual credit, and with the assent and assistance of the bank was later checked out by Harris, or otherwise appropriated by him, in payment of his individual debts; that the bank

was not a purchaser in good faith for value of the note in question, but, on the contrary, knew it was payable to and held by Harris as guardian, and that it belonged to the estate of his ward, Foster Lee Threlkeld, and constituted a large part of the latter's estate.

The amended petition, making C. W. Taylor and the First National Bank of Paducah defendants in the original action, set up as a cause of action against them the same facts alleged in the answer and cross-petition of the Empire State Surety Company, and asked judgment against them for the amounts, respectively, claimed in the amended petition.

It was also alleged in the amended petition that there were preferred debts amounting to $2,534.79 owing by the estate of Harris, secured by liens superior to the claim against the estate of $6,000.00 due his former ward, Foster Lee Threlkeld, which, together with the claim of the latter and certain unsecured debts of $3,500.00 owing by the decedent to general creditors, made the total indebtedness of his estate $12,034.79; that the entire assets of the estate amounted to only $7,625.00, which, when applied first to the payment of the lien debts of $2,534.79, second to the payment of the $6,0000.00 due the former ward, Threlkeld, would entirely exhaust the assets and leave $1,792.89 of the ward's demand unpaid, and nothing whatever to apply to the payment of the $3,500.00 of claims due general creditors. It was further alleged that the appellee Empire State Surety Company had become insolvent, or had gone into the hands of a rereiver for liquidation, since the institution of the action; and that, by reason of the payment of the $4,207.11, the estate of the decedent was able to make and would have to make out of its assets to the appellee People's Bank & Trust Company, the present guardian of Foster Lee Threlkeld, the administrator of the decedent was entitled to be subrogated to the rights of the latter, to what might be left of the sums, respectively, that such guardian may be adjudged entitled to recover of C. W. Taylor and the First National Bank of Paducah, after applying $1,792.89 thereof in satisfaction of what is yet due him from the estate of Harris, the former guardian.

The averments of the amended petition as to the amount of the assets and liabilities of the estate of Harris are confirmed by the report of settlement made with the administrator by the master commissioner, following the filing of which, the administrator, under an inter-

locutory order of the court, paid the lien debts of $2,534.79 and also the remainder of the assets, amounting to $4,207.11, to the present guardian of Foster Lee Threlkeld, leaving due the latter $1,792.89.

The appellant Taylor filed a general demurrer to the petition, as amended, and also to the answer and cross-petition of the appellee Empire State Surety Company, both of which were overruled, and to these rulings he took an exception. The answer filed by him to each of the pleadings referred to and the amendments thereto, controverted much of the affirmative matter contained therein, but admitted the transaction between himself (Taylor) and Harris with respect to his borrowing of Harris, as guardian, the $3,000.00 belonging to the estate of his ward, and the immediate lending by him of the same money to Harris; alleging, in substance, however, that the transaction was without any intent on his part to defraud the ward, and that it was engaged in by him solely for the purpose of making the profit that would or did result to him from borrowing the $3,000.00 from Harris at six per cent. and lending it to the latter at eight per cent. It was further alleged in each answer that the lien given upon his (Taylor's) land as security for the $3,000.00, by the mortgage he executed to Harris, and that given by the chattel mortgage to secure the $3,000.00 loaned by Taylor to Harris, was duly released by a proper entry upon the record made thereof in the office of the clerk of the Crittenden County Court. The affirmative matter of each of the above answers was controverted by reply. The appellant First National Bank of Paducah filed a special and general demurrer to the petition, as amended, and a special demurrer to the answer and cross-petition of the Empire State Surety Company; each of the special demurrers being to the jurisdiction of the court. The special and general demurrers to the petition, as amended, were overruled, to which the bank excepted. The special demurrer to the answer and cross-petition of the Empire State Surety Company was sustained, to which ruling it excepted. By its answer thereafter filed to the petition, as amended, the appellant First National Bank of Paducah traversed all of its material averments and the answer was controverted of record.

We have not undertaken to mention every pleading filed in the court below, or to specifically mention various rulings and orders appearing in the voluminous record,

which are deemed unnecessary to consider; but what has been said will, it is believed, give an understanding of the issues involved and decided in that court.

After the taking of proof by the parties there was a submission of the cause on its several branches, resulting in the judgment found on page 254 of the record, which, in substance, holds the appellants, Taylor and the First National Bank of Paducah, each liable for the $3,000.00 claimed against them, with interest from March 21, 1913; directs that each pay the amount mentioned to the master commissioner, and that officer to pay out of the gross sum thus received $1,792. 89, with interest from March 21, 1913, to the People's Bank & Trust Company, present guardian of Foster Lee Threlkeld, in satisfaction of the balance due its ward from the estate of Harris, the former guardian, and apply the remainder to the payment of claims due the general creditors of Harris' estate. The judgment also provides that after the appellants, Taylor and the First National Bank of Paducah, shall each have paid to the master commissioner the $3,000.00, he and it, upon filing a proper claim there-for, shall be permitted to participate pro rata, as a general creditor, in the distribution of the amount left in the hands of the master commissioner after paying to the present guardian of Foster Lee Threlkeld the $1,792.89 and interest, balance due him.

It is insisted for the appellants, Taylor and the First National Bank of Paducah, that J. B. Harris could not, as guardian, have maintained this action against them had he lived, and now that he is dead, it cannot be maintained by his administrator, who stands in his shoes. In view of the state of case here presented, the irrelevancy of these contentions is manifest. They ignore the fact that the present guardian of Harris' former ward is a party to the action, and that it was brought for the benefit of the ward; also that the surety in the bond of Harris as guardian is a party defendant to the action and seeking by cross-petition to recover for the benefit of the ward the trust funds for which the judgment appealed from makes appellants liable.

After the case had so far progressed as to develop the assets and liabilities of Harris' estate, and require the payment by the administrator, under an order of the court, of the preferred lien debts, aggregating $2,534.79, and $4,207.11 of the preferred claim of the present guardian of Foster Lee Threlkeld and their pay-

ment had exhausted the assets, leaving $1,792.89 of the claim of the latter, and $3,500.00 owing to the general creditors of the decedent, unpaid, the amended petition was filed to aid the present guardian of Threlkeld and the surety in the bond of Harris as guardian in compelling the return or payment by the appellants, Taylor and the First National Bank of Paducah, of such parts of the trust fund belonging to the estate of the ward, Threlkeld, as they had wrongfully received from Harris. Had the trust funds in question, instead of being misappropriated by them and Harris, been in the possession of the latter at his death, they would have gone into the hands of his administrator and been sufficient to pay in full what was owing by the estate of Harris to his ward, and, if so applied, the $4,207.11 which the administrator was compelled to pay out of the assets of the estate to the present guardian of Threlkeld, could have been applied to the payment of the demands of Harris' general creditors and more than paid them.

As the decedent, Harris, was primarily liable to his ward, Threlkeld, for the trust fund he received as his guardian, technically speaking, his administrator may not be entitled to be subrogated to the rights of the present guardian of Threlkeld as to the amounts, if any, owing by the appellants, Taylor and the First National Bank of Paducah; but equity demands that what may be left of such trust funds after the payment of the $1,792.89 yet due the present guardian of Threlkeld, shall be applied to the claims due the general creditors of Harris' estate. Such relief may properly be allowed in this action brought by the administrator and the present guardian of Foster Lee Threlkeld for a settlement of the decedent's estate and to compel the payment of the latter's indebtedness to the present guardian, to which the general creditors have become parties by filing therein their claims against the estate, and in which the surety of the decedent on his bond as guardian of Threlkeld is seeking by cross-petition to compel the administrator of the decedent and the appellants, Taylor and the First National Bank of Paducah, the latter as claimants and wrongful holders of a part of the trust fund, to pay to the present guardian of Threlkeld the amount of the trust fund received by Harris as such guardian. The action was brought under Section 428, Civil Code, Sub-section 2 of which provides:

"The representatives of the decedent and all persons having a lien upon or an interest in the property left by the decedent, or any part thereof, and the creditors of the decedent, so far as known to the plaintiff, must be parties to the action as plaintiffs or defendants."

As the appellants, Taylor and the First National Bank of Paducah, are claimants and in the possession of a part of the trust fund alleged to belong to the estate of the infant, Foster Lee Threlkeld, they were required by the provisions of the section, *supra,* to be made parties to the action. The relief demanded by the surety is such as it might have sued for alone by making the administrator of the estate of Harris, the guardian of Threlkeld, and the appellants, Taylor and the First National Bank of Paducah, parties defendants. It is not denied that all that was owing the present guardian of the ward by the estate of the former guardian was due when this action was instituted.

Civil Code, Section 661, provides:

"After the maturity of a debt or liability, an equitable action may be brought by a surety against his principal to compel payment of it, or by one who is jointly liable therefor with another to compel him to pay so much of it as he may be equitably liable for as between him and the plaintiff." Newman's Pleading & Practice, Section 162c; Meador v. Meador, 88 Ky., 218; Morrison v. Poyntz, 7 Dana, 307.

The cross action of the surety here is not one against co-sureties for contribution, but an action against the insolvent estate of a deceased principal and against others who are *quasi* principals, having in their hands, impliedly in trust, funds belonging to the *cestui qui trust.* In order to maintain the action the surety need not have discharged the debt.

Disposing first of the appeal of Taylor, it is pertinent to remark that he furnishes no evidence that, in any manner, exonerates him from the presumption that he intended to do what he in fact accomplished. He admits he knew the money he borrowed of Harris, and which the latter in turn borrowed of him, belonged to Harris' ward, and this being true, the conclusion is inevitable that he knew the transaction was a mere subterfuge to enable Harris to illegally appropriate his ward's money to his individual use. He does not plead the payment by him to Harris of the $3,000.00 he borrowed of his ward's money, or that Harris paid him the

same $3,000.00 borrowed of him; but only pleads the release by Harris of the mortgage he (Taylor) gave Harris, as guardian, to secure the payment of the $3,000.00, and the release by him (Taylor) of the mortgage he received of Harris on the latter's stock of goods as security for the $3,000.00 borrowed of him by Harris.

It is patent from the pleadings and evidence appearing in the record that the transaction between Taylor and Harris was a mere device under cover of which Harris, with the assistance of Taylor, misappropriated $3,000.00 of his ward's money; that neither of the parties paid to the other the money he pretended to have borrowed of him, and that the release by each of the mortgage given him by the other was without consideration and falsely made to give the appearance of payment of each of the mortgage debts. Whether the appellant Taylor had knowledge of the alleged agreement under which the appellee Empire State Surety Company became surety on the bond of Harris as guardian, namely: that the latter would keep the money of his ward, Foster Lee Threlkeld, invested in safe real estate mortgage securities, is not material, in view of the clearly established facts that he borrowed · of Harris what he knew was the ward's money, for the sole purpose of relending it to him as was done; that neither loan was in fact paid or intended to be paid, and that the release by each of the mortgage he had taken from the other was made to deceive, which manifests the fraud practiced by the parties and Taylor's willing participation therein. Indeed, it appears that he was paid $60.00 for the assistance he rendered in perpetrating the fraud; that sum being the excess in interest paid him by Harris on the pretended loan he made him, over what he was charged by Harris in the pretended loan made him by the latter. In other words, for aiding in the fraud he received a profit of two per cent. on $3,000.00 of Harris'·ward's money. It is manifest from the foregoing facts that both the infant, Foster Lee Threlkeld, and the surety in Harris' bond as guardian were as completely defrauded by Harris and Taylor as if they had appropriated and divided the $3,000.00 between them without the pretense of executing the notes and mortgages accompanying the transaction.

The appellant Taylor did not himself offer to testify and the record furnishes no evidence in his behalf

which can be held to relieve him from the liability sought to be imposed upon him in this case because of the trans-actions referred to. There can be no doubt from the admission contained in his answer, and all the evidence appearing in the record, that the money he claimed to have borrowed of Harris and in turn loaned the latter, is identified as a part of the *corpus* of the trust estate belonging to Foster Lee Threlkeld, infant ward of the present guardian, People's Bank & Trust Company; and as the fund was traced into his hands and clearly identified, the burden was upon him to show by satisfactory proof such payment or disposition thereof as would release him from liability to the *cestui qui trust*. Under the circumstances he is to be treated as a quasi trustee, and, therefore, liable for the misappropriation shown of the trust fund; for the law does not permit a guardian to convert to his own use a trust fund, as was done by the former guardian in this case, and one cannot assist him in such wrongful conversion of the trust fund, as was done by the appellant Taylor, without becoming equally liable with the guardian for the loss resulting to the *cestui qui trust* therefrom. Perry on Trusts (6th Ed.), Sections 427-429, 464, 828.

A constructive trust will arise from a purchase of personal property from a trustee, when the purchaser knows the transaction will constitute a violation of the trust under which the property was held by the trustee; for in such case it is a well-established rule that the purchaser, with notice of the trust, will be charged with the same in respect of the property, as would the trustee from whom he purchased it; and upon taking the property with notice of the trust he in law becomes a trustee. Perry on Trusts (6th Ed.), Sections 217, 832.

What has been said with respect to a purchaser of property from a trustee, with notice of the trust, applies with equal force to a borrower from a guardian of a fund, which the borrower knows to belong to the estate of his ward, for the purpose of instantly lending it back to the guardian as an individual, whether with or without profit to himself. In Farmers & Traders Bank v. Fidelity & Deposit Co. of Md., 108 Ky., 384, a surety company, which was on the bond of a trustee, sued the bank to recover certain funds which had been paid by the trustee out of the trust fund to the bank in payment of an individual indebtedness owing by him to the bank, the bank having knowledge that the pay-

ment was made out of the trust fund. Under this state of facts it was held by this court that the bank should be required to account to the *cestui qui trust* for the money it had received; and that the surety of the trustee, who had been compelled to account for the defalcation of his principal, was entitled to be subrogated to the rights of the *cestui qui trust* against one who had wrongfully appropriated part of the trust estate. The opinion quotes with approval the following statement of the law, found in 2 Pomeroy's Equity Jurisprudence, Sections 1048, 1051:

"Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of execution and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes itself a trustee for the original beneficiary. * * * It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation. It is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for a valuable consideration, and without notice." Section 1051: "But as long as it can be followed and identified in whosesoever hands it may come, except into those of a *bona fide* purchaser for value and without notice * * * the court will enforce the constructive trust for the benefit of the beneficial owner or original *cestui qui trust* who has thus been defrauded."

The application of the above doctrine to the facts of this case leaves no doubt of the appellant Taylor's liability for the amount adjudged against him.

The estoppel pleaded by the appellant Taylor constitutes no defense here. The estoppel is attempted to be rested upon the alleged knowledge possessed by the appellee Empire State Surety Company of the transactions between Harris and Taylor. The evidence wholly fails to show that the surety company had such knowledge or that it consented to the misappropriation of the money of Harris' ward resulting from the transactions

in question; nor did the mere fact that the mortgages executed by the parties were put to record, give the surety such notice of the misappropriation of the ward's estate as should have caused it to suspect the *bona fides* of the parties, or put it upon inquiry as to the character or purpose of the loans. The surety company, after signing Harris' bond as guardian, was not required to subject him to espionage or to be advised of every investment he made of his ward's money. It had the right to assume that the guardian was properly protecting his ward's estate against loss, in the absence of actual knowledge to the contrary, or of such information as would reasonably have required of an ordinarily prudent person inquiry as to the particular transaction and enabled him, by ordinary care, to know that a wrong was being done the ward by the guardian.

It is also insisted for the appellant Taylor that the judgment should be reversed because of the submission of the case at the same term of the court at which his answer to the amended petition of Harris' administrator and others was.filed; it being claimed that such submission was premature and forbidden by Section 366, Civil Code. This contention cannot avail the appellant, for two reasons: First, the record fails to show that he objected to the submission of the case; second, the absence from his answer of a specific plea of the payment by him of the $3,000.00 of the ward's money he borrowed of Harris, as guardian, together with the legal effect of the admissions of fact made by his answer demonstrated the insufficiency of the defense it interposed to the recovery sought for the benefit of the infant, hence the provisions of Section 366 of the Code, *supra,* do not apply. In Moss v. Roland, etc., 3 Bush, 66, the case was submitted and judgment rendered at the same term of the court at which the defendant's answer was filed, yet it was held on appeal that, as there was no objection to the submission, nor motion for a continuance or for a rehearing, the Court of Appeals would not adjudge the hearing premature or erroneous. Obviously, the submission or judgment cannot be held to be premature where, as in the instant case, the answer fails to present a meritorious defense to the action. We lay aside this branch of the case with the following excerpt from the opinion of the judge of the circuit court, which aptly states the conclusion we have in other words expressed:

"The court is further of the opinion that the cross-defendant, C. W. Taylor, when he borrowed the sum of $3,000.00 from Harris, guardian, did not do so in good faith, and that the loan by Harris, guardian, was not a loan in good faith, and that Taylor knew this fact when he accepted the loan and when he turned the money back to Harris. The whole transaction is adjudged to be an unwarrantable and unjustifiable juggling with the trust fund to the injury of the ward, which no amount of sophistry can disguise, and no good conscience can excuse or palliate. Taylor has never refunded this sum to Harris as guardian; he has not the temerity to plead payment. The best that can be said of him on this record is that he knowingly paid the debt due the trust estate by a surrender of his claim against Harris as an individual."

We next come to the consideration of the complaint made of the judgment of the circuit court by the appellant First National Bank of Paducah. Its first contention is that, as its corporate domicile and place of business is in McCracken County, and it was summoned in that county, the court was without jurisdiction to entertain the action as to it, or to render against it the judgment appealed from. The venue of the action, under Sections 65-67, Civil Code, is the county in which the personal representative of the decedent qualified, and that in which the decedent qualified as guardian of his ward. This being so, the action was properly brought in the Crittenden Circuit Court. It is a well known rule that where jurisdiction for one purpose properly attaches the court will grant full relief among the parties on all pertinent questions that may arise in the case, even though some of the questions may be merely incidental to the action. Hamilton's Admr. v. Riney, 140 Ky., 476.

In Dawkins, etc., v. Howe, etc., 112 Ky., 855, it was held that under Section 67, Civil Code, providing that an action by a ward against his guardian for the settlement of his accounts must be brought in the county in which the guardian qualified, an action to surcharge a settlement made by the plaintiff's former guardian was properly brought in Hardin County, where he qualified; and that the court, as an incident, had jurisdiction to cancel a deed executed by the guardian conveying land of the ward, though the land was located in Jefferson County and the persons to whom the guardian had con-

veyed it were residents of that county. Numerous cases may be found involving the settlement of insolvent estates of decedents in which the jurisdiction of the court to order sale or partition of lands located in other counties was upheld. Webb v. Wright, 65 Ky., 126; Fishback v. Green, 87 Ky., 107; Doty v. Association, 103 Ky., 720; DeHaven v. DeHaven's Admr., 104 Ky., 41..

Counsel for appellant rely upon the case of Citizens Natl. Bank v. Boswell's Admr., 93 Ky., 92. This was an action in the Fayette Circuit Court to settle a decedent's estate, and the Citizens National Bank, doing business in Jefferson County, and there served with process, was directed by the judgment of the circuit court to transfer to another on its books certain shares of stock held in the bank by the decedent. On appeal it was held that the Fayette Circuit Court had no jurisdiction of the Citizens National Bank, but this was because the bank was not interested in the property left by the decedent nor a creditor of his estate, hence it was not a necessary party to the action under Section 428, Subsection 2, Civil Code. In the instant case the appellant First National Bank of Paducah has a direct interest in the subject matter of the action, not merely because it is permitted to become a creditor of the decedent Harris' estate by the judgment appealed from, but its principal relation to the action is that of a claimant of a note, or its proceeds, constituting part of a trust fund to which the present guardian of Foster Lee Threlkeld is asserting title as against it and the estate of Harris, the former guardian, and it is a proper and necessary party to the action because it is alleged to be wrongfully holding and claiming this note of $3,000.00 or its proceeds belonging to the ward, Threlkeld, which it obtained from the decedent, Harris, as the latter's former guardian, and the possession of which, or its proceeds, is sought to be recovered by the present guardian of the ward and the surety in the bond of the former guardian, for the benefit of the ward. For the reasons indicated we do not regard the case of the Citizens National Bank v. Boswell's Admr., *supra,* an authority in point.

In our opinion the Crittenden Circuit Court had jurisdiction of the appellant First National Bank of Paducah, and to render the judgment appealed from. The only error committed by the circuit court was in sustaining the special demurrer to its jurisdiction which the

appellant First National Bank of Paducah filed to the cross-petition of the Empire State Surety Company, but as the bank took the same proof and as fully presented its defense as if the demurrer had been overruled, it cannot claim to have been in any way misled or prejudiced by the erroneous ruling in question, and the judgment should be treated as if the demurrer had not been sustained.

It remains to be determined whether the appellant bank acquired title to the $3,000.00 note through its sale and assignment to it by the decedent, Harris, as guardian of Foster Lee Threlkeld. If the bank's relation to the transaction in question was that of "a purchaser in good faith for value" of the note, Section 4707, Kentucky Statutes, which empowers a guardian to sell the personal property of the ward for reinvestment, relieved it of the duty "to look to the application of the proceeds of sale."

In our opinion the evidence fails to show that the appellant bank was a purchaser in good faith for value of the note from the trustee. It is admitted in the deposition of the president of the bank that the note was by its terms payable to Harris as guardian of Foster Lee Threlkeld; and further admitted that the consideration which the bank paid Harris for the note was not paid to him as guardian, but placed to his credit on the books of the bank as an individual; and that within two months thereafter, beginning with the day of the assignment of the note to the bank, Harris was allowed by it to draw therefrom on his personal checks and in settlement of his individual liabilities, the proceeds of the note. Although it was stated by the president in his deposition that in purchasing the note for the bank he acted in good faith, this merely states a conclusion, which can have little weight in view of the admitted facts; that the bank purchased the note impressed with the trust and itself misapplied the proceeds by placing them to the credit of Harris as an individual, and later paying them out on his checks, in satisfaction of his individual debts. By such conduct on the part of the bank and its officers Harris was knowingly and actively assisted by them in misappropriating the trust fund belonging to the estate of his ward, to the latter's injury. In addition, it was admitted by the president of the bank, by whom the note was purchased for the bank, that he was not acquainted with Harris and had never seen him, nor had the bank ever had any business transactions with him before the

purchase of the note. As the note was payable to Harris as guardian of Foster Lee Threlkeld and showed on its face that it was secured by mortgage lien on real estate, the appellant bank, through its president, must be presumed to have known that Harris had no right to sell the note except for reinvestment of the proceeds. According to the deposition of the president, he made no inquiry as to whether or how the proceeds of the note, when received by Harris, were to be reinvested, but, on the contrary, was advised by Harris that his purpose was to deposit the proceeds of the note in the appellant bank to his credit as an individual.

The foregoing uncontroverted facts manifestly impeach the good faith of the bank in purchasing the note. This conclusion is sustained by the authorities cited in that part of the opinion dealing with the appeal of C. W. Taylor, and especially so by Farmers & Traders Bank v. Fidelity & Deposit Co. of Md., *supra,* the facts of which are very similar to those connected with the appellant bank's purchase of the note from Harris. The following authorities are equally in point.

In Hill v. Fleming, 128 Ky., 201, we held that where a creditor of a deputy sheriff received in payment of a debt the latter owed him a check signed by the debtor followed by the words "deputy sheriff," the creditor received notice that the funds on which the check was drawn were deposited to the debtor's credit as deputy sheriff, and was required to make inquiry as to whether or not the funds transferred by the check belonged to the debtor individually or to the State and county, and on his failure so to do he received the amount of the check impressed with the trust in favor of the State and county. Furthermore, that the sureties of a deputy sheriff, who paid the amount of his defalcation resulting from his failure to account to the State and county for taxes collected by him, were entitled to be subrogated to the rights of the sheriff or of the State and county, and to pursue a fund impressed with the trust in favor of the State and county. In the opinion it is said:

"The law is now well settled that as between the *cestui qui trust* and trustee, and all parties claiming under the trustee, other than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all fruit of such property, whether in its original or altered state, continues to be

subject to or affected by the trust.'' 28 Amer. & Eng. Enc. of Law, 1108; Central Nat'l. Bank v. Conn. Mutual Life Ins. Co., 104 U. S., 54; Cavin v Gleason, 105 N. Y., 256; Allen v. Russell, 78 Ky., 105; Williams' Admr. v. Mc-Clanahan, 3 Met., 420.

In respect to the effect to be given the words ''trustee'' or ''guardian'' and the like, attached to the signature on a check or note, it is in the opinion said:

''A number of reputable authorities take the position that the words 'trustee,' 'agent,' 'collector,' 'guardian,' etc., when accompanying the signature of a party, are to be construed as mere *descriptio personae* and are insufficient to give notice of a trust relation. * * * Other cases hold that such words alone are sufficient to give notice that a breach of trust is about to be committed, and that it is necessary for the purchaser to inquire whether the circumstances of the case constitute reasonable ground to conclude that a fraud is contemplated. The latter view has been adopted by this court.''

In Prather v. Weissinger, 10 Bush, 117, we held that a promissory note made payable to one as trustee and indorsed in blank by him as trustee, bore upon its face such evidence of a trust as was sufficient to put one of ordinary prudence on inquiry as to its character and limitations. It seems to be well settled that if a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability because responsible for the wrong done, and may be made to replace the fund which it has been instrumental in defrauding. Duckett v. Nat'l. Mechanic's Bank, 39 L. R. A., 88; 3 Am. & Eng. Ency. of Law (2d Ed.), 832.

In U. S. Fidelity & Guaranty Co. v. People's Bank, 127 Tenn., 720, 157 S. W., 414, the facts stated are strikingly like those found in the instant case. H. L. Turner, guardian of Turner Fryer and Gladys Fryer, presented to the People's Bank a check in words and figures as follows:

''The Weakley County Bank.

''Dresden, Tenn., April 5, 1910.

Pay to the order of H. L. Turner, $516.24, five hundred sixteen and 24/100 dollars, Turner Fryer and Gladys Fryer. Amt. in full in the cause. Ward et al. v. Fannie Turner et al.

(Signed) C. H. HILLIARD, Clerk.''

The assistant cashier of the bank requested Turner to indorse the check, in compliance with which he wrote on the back of it, "H. L. Turner, guardian." This indorsement brought to the attention of the assistant cashier the fact that the check represented funds received by Turner as guardian for the two children mentioned therein. Upon being asked by the assistant cashier if he wished to have the check entered on a separate account as guardian, Turner said: "No, he wished it entered on his personal account and that he would expend the money solely for the benefit of his wards, and would keep an accurate account on his private books; that it would be more convenient for him to have but the one account." Accepting this explanation and relying on the promise of Turner to properly expend the funds, the assistant cashier gave him credit for the check on his personal account, which was then overdrawn to the amount of $30.40. Turner was then a man of high standing, but subsequently, after squandering all the funds represented by this credit on his own personal account, he absconded, and the United States Fidelity & Guaranty Company, as surety on his bond as guardian, was compelled to pay the amount which he thus appropriated of the estate of his wards. The surety brought suit against the bank to recover the amount of the check and obtained judgment against the bank therefor. The judgment was affirmed both by the Court of Civil Appeals and the Supreme Court of Tennessee. In the opinion it is said:

"The entry of the check to the personal credit of the guardian by the bank was a conversion of the fund by both. Upon the making of such entry the bank became a trustee of the fund, and became liable therefor, and could be saved from being compelled to account to the wards therefor only upon the guardian's subsequent true administration thereof and accounting therefor.   *   *   * The fact that Turner promised the bank that he would faithfully administer the fund, and would keep a true account thereof on his own private books, cannot be held to excuse the original conversion that made the misuse of the funds by the guardian easy and expeditious through checks drawn and signed with his personal name. Under the facts stated the bank took the risk of the guardian making a proper disposition of the fund and keeping a true account thereof. This could not law-

fully be imposed on the shoulders of his wards. The reliance of the bank upon the guardian's promises, under such circumstances, was simply folly. We do not wish to be understood as holding that a bank is in general liable for the acts of trustees who deposit money with them. If the money is deposited to the trustee's credit as such, and his checks are drawn on this fund in his character of trustee, or guardian, as the case may be, the bank need look no further. It is not responsible for his administration of the fund, unless it knows, or in some special transaction has good reason to believe, that he is misappropriating the fund. It would be out of all reason to impose such responsibility on banks. The special case we have before us, and to which we confine this opinion, is one wherein the bank knowingly united with the guardian or trustee in a misappropriation of the fund, by crediting it to the individual account of such trustee or guardian.''

In the instant case the fault of the president of the bank, who acted for it in purchasing of J. B. Harris the note of $3,000.00 payable to himself as guardian, was greater than that of the assistant cashier of the bank in the case, *supra*, for he made no inquiry of Harris as to whether he intended to invest for the benefit of his ward the money paid him by the bank for the note, permitted him to deposit it to his individual account, without inquiry or objection, and, shortly thereafter, to withdraw it on his individual checks, given in payment of his individual liabilities. Obviously, such conduct on the part of the chief officer of the bank made it a knowing participant in the conversion of the fund of the ward by the guardian and, consequently, a trustee of the fund. This being so, it is estopped to deny its liability to the present guardian of the ward for the amount of the note.

We find no substantial error in the judgment of the circuit court. Such irregularities as appear in its phraseology do not affect its validity, in view of its explicit requirement that the amounts recovered be paid the master commissioner and its equally explicit directions as to the application that officer must make of them. As the judgment properly determined the rights of the **parties,** it is affirmed as to each of the appellants. The whole court, except Judge Nunn, sitting.